Argued September 7; affirmed September 19, 1944

In re Norton's Estate

NORTON *v.* NORTON et al.

(151 P. (2d) 719)

Before BAILEY, Chief Justice, and BELT, KELLY, LUSK, BRAND and HAY, Associate Justices.

*Elmer Johnson,* of Portland (Griffith, Peck, Phillips & Nelson, of Portland, on the brief) for appellant.

*S. J. Bischoff,* of Portland, for respondent Minnie Norton.

*John W. Kendall,* of Portland (Black, Johnson & Kendall, of Portland, on the brief), for respondent Gladys Crawford, executrix.

*Jesse G. Warrington,* of Portland, for respondent Clarence H. Nortin.

KELLY, J.

Proceeding to determine who are heirs and distributees of the estate of Mary Norton, deceased. From an order sustaining two general demurrers to the cross-petition and cross-complaint of Claude Harold Norton and ordering, adjudging and decreeing that the said Claude Harold Norton is not an heir to the estate aforesaid and is not entitled to inherit or receive as heir of said estate any part thereof, said Claude Harold Norton appeals.

KELLY, J.

This is a proceeding instituted pursuant to the provisions of Chapter 331, General Laws of Oregon, 1913, pp. 646-650, being Chapter 13 of the Probate Code, comprising sections 19-1301 to and inclusive of section 19-1306, O. C. L. A. These provisions of the statute prescribe the procedure for determining heirship in those cases wherein the court in which an estate is being administered considers that reasonable doubt or uncertainty exists on the showing submitted as to who are heirs or persons entitled to distribution in whole or in part of such estate, or where any person claiming to be an heir or distributee shall request such action. Section 1, Chapter 331, supra. Section 19-1301, O. C. L. A.

In this case, the administratrix filed a petition disclosing that there were three claimants to the estate besides the son of decedent; that each of these claimants asserted a claim to the entire estate of decedent because of the alleged fact that the surviving son of decedent had feloniously killed decedent. These three claimants are Claude Harold Norton, appellant herein,

who is the grandson of decedent, being an only child of decedent's son who is charged with having slain decedent; the executrix Emma Gardner, deceased, who was a surviving sister of decedent, but who died subsequently, and the State Land Board of the State of Oregon.

By his answer and cross-petition and cross-complaint Claude Harold Norton, appellant herein,

"I.

"Admits that said Mary Norton died intestate in said county of Multnomah on March 3, 1942, and that Minnie Nortin is administratrix of said estate, duly appointed and qualified.

II.

"Admits that the assets of said estate are as alleged in said petition; that said administratrix is ready to make final accounting; and that there is a controversy as to who shall inherit said estate which has arisen substantially as alleged in said petition.

III.

"Admits that he is the son of the man referred to in said petition as Clarence H. Nortin and the grandson of the said Mary Norton, deceased, and that he has claimed and now does claim the right to inherit said estate.

IV.

"He denies that said Clarence H. Nortin and the said Emma Gardner, sister of the decedent, and the State of Oregon, or any or either of them, is entitled to inherit said estate, and alleges that he, Claude Harold Norton, is the person and the only person entitled to inherit said estate.

"For a first further and separate answer, and by way of cross-complaint, seeking affirmative relief, the said Claude Harold Norton alleges:

I.

"That decedent Mary Norton left surviving her one son who is referred to in said petition as Clar-

ence H. Nortin, who is now confined in the Oregon Penitentiary, and this defendant-petitioner is informed and believes and upon such information and belief alleges the fact to be that decedent Mary Norton left no other child surviving her.

II.

"That decedent's said son in his early life was known as and went by the name of Claude H. Norton, and this defendant-petitioner believes that decedent's said son was so christened, and that Claude H. Norton is his true name, but that he later changed his name to Clarence H. Nortin.

III.

"That on July 31, 1906, in the State of New Jersey, said Claude H. Norton married Lilian A. Redden, and thereafter and on November 8, 1907, this defendant-petitioner was born to the said Claude H. Norton and his said wife Lilian A. (Redden) Norton, and he is the only child the said Claude H. Norton, later known as Clarence H. Nortin, ever had, and the only grandchild left surviving the said Mary Norton, deceased.

IV.

"That on March 3, 1942, in said county of Multnomah, the said Claude H. Norton alias Clarence H. Nortin feloniously took the life of his mother, the said Mary Norton, by shooting her in the head with a rifle, and under the provisions of Oregon Compiled Laws Annotated, Section 16-203, he is prohibited from inheriting or receiving any portion of said estate.

V.

"That this defendant-petitioner Claude Harold Norton is the direct lineal descendant of the said Mary Norton, deceased, and is the only living lineal descendant of said Mary Norton, except her said son, and this defendant-petitioner is entitled to said estate and the whole thereof."

To this answer and cross-petition three demurrers were filed embodying substantially the same statement

of the grounds thereof which is in effect that said cross-petition fails to state facts sufficient to show a right of Claude Harold Norton to inherit from decedent's estate.

Omitting the title, the order from which this appeal is prosecuted is as follows:

"This matter came on regularly to be heard on the several demurrers of Gladys Crawford, Executrix of the Estate of Emma Gardner, deceased, Clarence H. Nortin and the State Land Board of the State of Oregon to the first further and separate answer and cross complaint and petition of Claude Harold Norton filed herein; the said Gladys Crawford, Executrix, appeared by John W. Kendall, one of her attorneys, Clarence H. Nortin appeared by his attorney, Jesse C. Warrington, and the State Land Board by George Wm. Neuner, Assistant Attorney General of the State of Oregon, and the said Claude Harold Norton by Elmer Johnson of the firm of Griffith, Peck, Phillips & Nelson, and the court having heard all three of said demurrers together and having heard arguments of counsel for all parties and briefs by the several parties having been filed, and the court having taken the matter under advisement and having filed herein its memoranda opinion and ruling herein, the court finds that upon the record as the case now stands the State Land Board of the State of Oregon has no interest in said proceedings and its demurrer herein should not be considered in this proceeding, and the court having also found that the other two demurrers should be sustained, it is, therefore,

"Considered, Ordered, Adjudged and Decreed as follows:

"(a) That the demurrer of the State Land Board of the State of Oregon be, and the same is hereby, dismissed;

"(b) That the demurrer of Gladys Crawford, Executrix of the Estate of Emma Gardner, deceased, to said cross petition and cross complaint of the said Claude Harold Norton, be, and the same is hereby, sustained;

"(c) That the demurrer of Clarence H. Nortin to the cross petition and cross complaint of the said Claude Harold Norton be, and the same is hereby, sustained;

"(d) That the said Claude Harold Norton is not an heir to the Estate of the said Mary Norton deceased, and is not entitled to inherit or receive as heir of said estate any part thereof.

"Dated at Portland, Oregon, this 29th day of December, 1943.

Ashby C. Dickson,<br>Judge."

■ At the outset, it may be noted that this is an appeal from an order which, among other things, overrules two demurrers, but does determine the question of heirship by declaring how the estate in suit shall be distributed. The general rule is that a judgment determining only the rights of some of the parties is not final and hence not appealable. *Durkheimer Investment Co. v. Zell, et al*, 161 Or. 434, 90 P. (2d) 213; *Abrahamson, et al v. Northwestern Pulp & Paper Co., et al*, 141 Or. 339, 15 P. (2d) 472, 17 P. (2d) 1117; *Watkins v. Mason*, 11 Or. 72, 4 P. 524.

■ The statute, upon the provision of which the instant proceeding is based, contains the following statement:

"* * * Any order determining either affirmatively or negatively the rights of any person as an heir or distributee shall be deemed a final order and an appeal therefrom by any party aggrieved shall lie as from any other final order of the court

in a probate proceeding. * * *" Section 19-1304, O. C. L. A.

It cannot be gainsaid that the order above set out determines negatively the rights of appellant Claude Harold Norton as an heir or distributee of the estate in suit. Neither can it be said that the legislature is without authority to provide an appeal from an order in a special proceeding. The wisdom of providing for piecemeal appeals may be challenged and the writer has no inclination to defend it. The privilege of appeal carries with it the duty to exercise that privilege within the time prescribed therefor, which makes piecemeal appeal provisions fertile fields of unnecessarily numerous and many times oppressively expensive proceedings in the appellate court. For the purpose of the instant case however, we have no alternative than to act in accordance with the express provisions of the statute.

This leads us to the question whether appellant's answer and cross-petition discloses a state of facts, which, if true, constitutes him the sole heir of decedent.

■ The statute prescribes that the real property of decedent shall descend to the decedent's children and to the issue of any deceased child by right of representation. Section 16-101, O. C. L. A. For the purposes of this case, it may be said that the personal property of an estate in suit should be distributed to the persons entitled to the real property thereof. Section 16-102, O. C. L. A.

■ It is argued by counsel for appellant that decedent's son should be deemed to be in the category of one who is civilly or naturally dead. We have no statutory provision to that effect. We are without authority therefore to so decree.

Appellant calls attention to the statutory provisions of Ohio, Nebraska and North Dakota: Page's Ohio General Code, section 10503-17; Compiled Statutes of Nebraska (1929) section 30-119; Compiled Laws of North Dakota (1913) section 5683. These statutory provisions, unlike the statute of Oregon, prescribe that in cases such as the one reflected by appellant's cross-petition in the instant case the slayer is deemed to be dead. Manifestly, the inclusion of this provision in the statutes of the three states named was deemed necessary by the respective legislative assemblies of those states because recourse to the courts for such construction of a statute containing no such provision would be unavailing.

■ We hold that the statute merely depriving one, who feloniously slays another, from inheriting from his victim's estate and from receiving the benefits of life or accident insurance does not create a new heir. It merely disqualifies such heir from asserting the right to inherit, and deprives him of rights he might otherwise assert by reason of certificates of life or accident insurance.

By that statute, provision is made that the proceeds of an insurance policy issued by a benevolent organization and payable to one who causes or procures to be taken the life upon which such policy or certificate is issued, or who causes or procures a disability of such person shall not be taken by such tort feasor. Section 16-203, O. C. L. A.

We find also the following provision in said section of the statute:

"* * * but in every instance mentioned in this section, all benefits that would accrue to any such person upon the death or disability of the person whose life is thus taken or who is thus disabled

shall become subject to distribution among the other heirs of such deceased person according to the rule of descent and distribution in case of death as now provided by law, and in case of disability the benefits thereunder shall be paid to the disabled person. · * * *''

■ In the light of the facts alleged in appellant's cross-petition, no one can be said to be the heir of decedent. Heirs are those persons appointed by law to succeed to the real estate of a decedent in case of intestacy.

■ The son, because of his allegedly felonious slaying, is not appointed by law to succeed to the real estate of the decedent. Other lineal descendants are so appointed only in case there is no child of the intestate living at the time of her death. Despite the serious charge against him, decedent's son was living at the time of decedent's death, hence other lineal descendants are not appointed by law to succeed to her real estate.

■ The deceased sister, who survived decedent, was not and is not appointed by law to succeed to decedent's real estate; it is only in case that the intestate shall leave no lineal descendants, neither husband, nor wife, nor father, nor mother, that a surviving sister is appointed to succeed to the intestate's real property. Section 16-101, O. C. L. A.

The statute disqualifying the son because of his matricide, if the same is proved, did not create any new heir.

It has been held that in the absence of any statutory provision thereupon, a husband cannot, by intentionally killing his wife, create the status of a widower in himself. In that case the pertinent statute provides:

"When a wife shall die without any child or other descendants in being capable of inheriting,

her widower shall be entitled to one-half of the real and personal estate belonging to the wife at the time of her death, absolutely, subject to the payment of the wife's debts." Laws of Missouri, 1895, p. 169; Vol. 1, Revised Statutes of Missouri, 1899, section 2938.

The court held that the term "widower" means one who has been reduced to that condition by the ordinary and usual vicissitudes of life and not one, who, by felonious act, has himself created that condition; and hence, where a husband murdered his wife, and three hours afterward killed himself, he did not on his wife's death acquire under the section any estate in her property to which his heirs could succeed upon his death. *Perry v. Strawbridge*, 209 Mo. 621, 108 S. W. 641, 14 Ann. Cas. 92, 123 Am. St. Rep. 510, 16 L. R. A. (N. S.) 244.

It is argued by appellant that to follow the mandate of the statute of descent which designates a grandson as an heir only when the parent of such grandson is dead, is to hold that the grandson's blood is corrupted because his father committed the felony mentioned. We do not so understand the matter. In our view, the grandson never has been an heir of his paternal grandmother. Her sole heir is her son who is living but disqualified to inherit her estate if it be true, as we must assume in considering the demurrers in suit, that he feloniously killed her.

Appellant expressly disavows that he claims the right to inherit his grandmother's estate through or under his father; but only because his father should be deemed to be civilly or naturally dead.

This disavowal renders it unnecessary to discuss the English and Canadian authorities cited in Wharton

on Homicide, 3rd Ed. p. 1064, section 665, wherein we find the following expressions:

> "To permit a person who commits a murder, or any person claiming under him, to benefit by his criminal act, would be contrary to public policy. * * * And in applying this rule, no distinction can be made between a death caused by murder and one caused by manslaughter. * * * And the rule that the common-law doctrine of succession to property does not operate in favor of one who wilfully takes the life of his ancestor should apply against any person claiming through or under the slayer."

Because of the argument made by appellant that to hold the provision of the statute of descent controlling as to those who are entitled to inherit from an intestate is to hold that the blood of a matricide and that of his descendants is corrupted, we feel warranted in noting that the case of *Box v. Lanier*, 112 Tenn. 393, 79 S. W. 1042, 64 L. R. A. 458, is cited in said section 665, supra, in support of the following statement:

> "Nor does a rule of law that a common-law right of succession to property does not operate in favor of one who wilfully takes the life of his ancestor contravene a constitutional provision that a conviction of crime shall not work a forfeiture of the estate."

In thus referring to said section 665 of Wharton on Homicide, we do not intend to suggest or intimate that by a determination that appellant herein is not and never was an heir of his deceased paternal grandmother a forfeiture is thereby effected. Appellant has no right of inheritance from his paternal grandmother and never has had any such right, hence, he could not forfeit such a right.

For these reasons, the order appealed from in so far as it sustained the demurrers to appellant's cross-petition is affirmed.

■ We are at a loss to understand how the State Land Board's demurrer could be dismissed. It was neither sustained nor overruled nor stricken from the files, and while no appeal has been taken by the State Land Board, we do not desire to be understood as affirming the order in so far as it dismisses the Board's demurrer.