Argued September 12; modified October 9, 1945

In re Norton's Estate

STATE LAND BOARD et al. *v.* NORTIN et al.

(162 P. (2d) 379)

Before Belt, Chief Justice, and Kelly, Bailey,
Lusk and Brand, Associate Justices.

*Grace L. Bottler,* Assistant Attorney General (George Neuner, Attorney General, on the brief), for State Land Board, appellant.

*John W. Kendall,* of Portland (Black, Johnson & Kendall, of Portland, on the brief), for Gladys Crawford, executrix.

*Jesse G. Warrington,* of Portland, for Clarence H. Nortin, respondent.

*S. J. Bischoff,* of Portland, for Minnie Nortin, administratrix.

LUSK, J.

Mary Norton died intestate on March 3, 1942, leaving as her only surviving relatives a son, Clarence H. Nortin (born Clarence H. Norton); a grandson, Claude Harold Norton, the son of Clarence H. Nortin; and a sister, Emma Gardner, since deceased.

This case is a proceeding in the Circuit Court for Multnomah County, Probate Department, to determine who are the heirs and distributees of Mary Norton, deceased. The claimants in the court below are the son of the intestate; the executrix of the deceased sister; and the State Land Board, which asserts that the estate has escheated. We have heretofore rendered a decision adverse to the claim of the grandson. *Norton v. Norton,* 175 Or. 115, 151 P. (2d) 719, 156 A. L. R. 617. On this appeal the rights of the sister and the State Land Board are involved. They have appealed from decrees dismissing their petitions. The respondents are Clarence H. Nortin and Minnie Nortin, administratrix of the estate of Mary Norton, deceased. Should it be determined that the sister's petition states facts sufficient to show that she is entitled to inherit the estate, the case of the State Land Board must fail.

In view of contentions now advanced it will be well to state briefly the issue and the ground of decision on the former appeal.

Claude Harold Norton filed a petition in the Circuit Court alleging in substance that his father, Clarence H. Nortin, had feloniously killed Mary Norton and thereby had lost his right to inherit her estate under the provisions of § 16-203, O. C. L. A., and that he, the said Claude Harold Norton, was entitled to the estate as "the only living lineal descendant of said Mary Norton except her said son." Demurrers to this ..... were filed by Clarence H. Nortin; Gladys Crawford, executrix of the estate of Emma Gardner, deceased; and the State Land Board. The Circuit Court "dismissed" the demurrer of the State Land Board, but sustained the other demurrers, and, as stated, entered a decree that Claude Harold Norton was not an heir

and not entitled to receive the estate of Mary Norton, deceased. He appealed, and the only question in this court, as in the Circuit Court, was whether his petition stated facts sufficient to show that he was the heir. We held that the demurrers were properly sustained and affirmed the decree.

"The son", it was said, "because of his allegedly felonious slaying, is not appointed by law to succeed to the real estate of the decedent. Other lineal descendants are so appointed only in case there is no child of the intestate living at the time of her death. Despite the serious charge against him, decedent's son was living at the time of decedent's death, hence other lineal descendants are not appointed by law to succeed to her real estate."

■ And it was added, though unnecessary to the decision, that the sister, the question of whose status was not then before the court and not presented in argument, was not appointed by law to succeed to the decedent's estate. Being dictum, this statement is not the law of the case (3 Am. Jur., Appeal and Error, 551, § 996) and does not preclude us from now considering and deciding the question raised by the petition of the sister's executrix.

That petition alleges the relationship of Emma Gardner to Mary Norton; the felonious slaying of Mary Norton by her son, Clarence H. Nortin; and that the executrix of the estate of Emma Gardner, deceased, is entitled to the whole of the estate of Mary Norton, deceased.

It is the contention of the respondents that our decision that the grandson is not an heir compels a like disposition of the sister's claim. That decision was based upon the first subdivision of § 16-101, O. C.

L. A., providing that the real property of an intestate shall descend:

> "In equal shares to his or her children, and to the issue of any deceased child by right of representation; and if there be no child of the intestate living at the time of his or her death, such real property shall descend to all his or her other lineal descendants; and if all such descendants are in the same degree of kindred to the intestate, they shall take such real property equally, or otherwise they shall take according to the right of representation".

As appears from the excerpt quoted above from the opinion of the former appeal, we held that because there was a child of Mary Norton living at the time of her death, namely, Clarence H. Nortin, the alleged slayer, the condition upon which depends the right of a lineal descendant of that child to inherit was not present. The respondents argue that the same reasoning applies to the following clause of the third subdivision of § 16-101:

> "If the intestate shall leave no lineal descendants, neither husband nor wife, nor father nor mother, such real property shall descend in equal shares to the brothers and sisters of the intestate".

It is said that in fact Mary Norton died leaving lineal descendants, namely, her son and her grandson, and therefore the condition upon which depends the right of the sister to inherit is not present.

But this contention ignores another provision of § 16-101 which, in our opinion, makes the respondent's position untenable. Subdivision (6) reads:

> "If the intestate shall leave no lineal descendants or kindred, such real property shall escheat to the state of Oregon."

■ It will be observed that the identical phrase, ''if the intestate shall leave no lineal descendants'', appears both in Subd. (6) and Subd. (3). That phrase is employed in each instance for the purpose of declaring the contingency which shall determine the succession to the real property of an intestate. It is an established rule of statutory construction that:

> ''In the absence of anything in the statute clearly indicating a contrary intent, where the same word or phrase is used in different parts of a statute, it will be presumed to be used in the same sense throughout; and where its meaning in one instance is clear, this meaning will be attached to it elsewhere, * * *.'' 59 C. J. 1003, § 597, quoted in *Cordon v. Gregg,* 164 Or. 306, 317, 97 P. (2d) 732, 101 P. (2d) 414. To the same effect, see *State ex rel. Eugene v. Keeney,* 123 Or. 508, 512, 262 P. 943, 946; *James v. City of Newberg,* 101 Or. 616, 619, 201 P. 212.

There is nothing in § 16-101 to indicate or suggest that the legislature intended to use the phrase in question in one sense in Subd. (3) and in a different sense in Subd. (6), and it is, therefore, our duty to attach the same meaning to that phrase throughout.

The meaning of the phrase in Subd. (6) is not open to doubt. The legislature was speaking of lineal descendants, and, as well, of kindred, qualified to inherit. In 1864 when Subd. (6) of § 16-101 was enacted, Ch. 15, p. 719, Deady's General Laws of Oregon 1845-1864, establishing a procedure for escheats, was in existence. Section 1 of that chapter provided:

> ''When any person shall die without heirs, leaving any real or personal property in this state, the same shall escheat to, and become the property of the state.''

 The word "heirs" in the foregoing provision was, we think, used broadly as meaning "those succeeding to the estate of one dying intestate", 16 Am. Jur., Descent and Distribution, 821, § 49. And both by that provision and Subd. (6) of § 16-101, O. C. L. A., the legislature was declaring the circumstances in which the property of an intestate should escheat. They are *in pari materia* and to be read together. It is unreasonable to suppose that it was intended by § 1 of Ch. 15, General Laws of Oregon 1845-1864, to provide for an escheat in all cases where there was no one to succeed to the estate (even though there might be a person in existence who, but for some disqualification would inherit), and by Subd. (6) of § 16-101, O. C. L. A.; to say, by inference at least, that an estate should not escheat because of the existence of lineal descendants who could not inherit. If so literal an interpretation of Subd. (6) were adopted it might well be that the property of an intestate would vest in no one. That, indeed, would be the result in this case if the facts stated in the petition of the executrix of the deceased sister are true, for, under the construction insisted upon by the respondents, there is no one to take the property. Neither the son, because he feloniously took the life of his mother; nor the grandson, as we have already determined; nor the sister, nor the state, because the intestate left lineal descendants.

This is not our construction of the statute, so far as it affects the sister and the state, but the logical consequence of a construction which ignores what seems to us to be the manifest intention of the legislature.

 We are therefore of the opinion that the phrase "if the intestate shall leave no lineal descendants", as used in Subd. (6), refers to lineal descendants quali-

fied to succeed to the estate of the intestate, and that, under the rule of statutory construction which has been stated, it bears the same meaning in Subd. (3). In that view the petition of the executrix of the estate of the deceased sister states a valid cause of suit, for it shows that, apart from the sister, there was no person living and qualified to take the estate at the time of the intestate's death.

It is apparent that the judge of the court below, in reaching a contrary conclusion, felt that he was governed by the dictum we have quoted from our former opinion. For the reasons stated, however, we find ourselves unable to adhere to what we there said upon the question now presented for the first time in this court.

This disposition of the claim of the deceased sister renders it necessary to affirm the decree as to the State Land Board, for under any view of the case the estate will not escheat. The sole remaining controversy is between Clarence H. Nortin, the son, and Gladys Crawford, executrix of the estate of Emma Gardner, deceased. The only question left to be determined is whether Clarence H. Nortin feloniously took his mother's life; if that charge shall be established the executrix will succeed to the estate; otherwise the estate will be vested in Clarence H. Nortin.

The decree as to Gladys Crawford, executrix, is reversed with costs. The decree as to the State Land Board is affirmed, and the cause is remanded to the Probate Court for further proceedings in conformity to this opinion.

KELLY, J. (Dissenting).

As I understand it, the opinion of the court is to the effect that the language of subdivision (6) of Sec-

tion 16-101, O. C. L. A., which is the statute of descent, and the language of Section 1 of Chapter 15 of Deady's General Laws of Oregon, 1845-1864, p. 719, not only justify but require us to hold that if the charge of matricide is proven, a collateral kinswoman, namely, a sister of the intestate, became an heir of the intestate. I cannot concur in such a holding.

It is also stated in the opinion of the court that if we adhere to the holding of our former opinion in this case (175 Or. 115, 151 P. 2d 719, 156 A. L. R. 617) to the effect that if the son feloniously killed her, the intestate left no legal heir, because there is a surviving son, who, notwithstanding his alleged crime, was living when the intestate died, then and in that state of the case the property of the intestate will vest in no one. I cannot concur in such a conclusion.

In my opinion, the language of subdivision (6) of the statute of descent did not have and could not have the effect to impair, modify, repeal, abrogate, or destroy the ultimate ownership by the state of all property within its jurisdiction.

> "Escheat is an incident or attribute of sovereignty and rests on the principle of the ultimate ownership by the state of all property within its jurisdiction." 30 C. J. S., Subject: Escheat, p. 1164; Section 1, 19 Am. Jur. Subject, Escheat, p. 381.

The distinction between the right of the state to an order of escheat and the right of an heir to an order of succession, in my opinion, dissipates the rule of construction applied to the statute of descent by the opinion of the court. The right of an heir is to be determined by the statute or statutes pertaining to the right to inherit and to descent and distribution of decedents' estates. No statute is required to sup-

port the title of the state as the ultimate owner of all property within its jurisdiction. That is an attribute of the state's sovereignty.

Moreover, the present statute, prescribing the procedure in escheat matters, which is the latest expression of the legislature, being an amendment enacted in 1943, in my opinion, clearly discloses that where there are no legal heirs, the state is entitled to an order of escheat. The language to which I refer in said amendment is as follows:

> "The county court before whom any probate matter is pending, shall determine whether there are any legal heirs to said estate, and if it be determined by said court that there are no legal heirs thereto said court shall order the administrator of said estate to serve upon the said state land board a true copy of each order, motion, petition or citation and of the order of court directing that said proceeds shall escheat, together with a copy of the final account in said estate." Section 1, Chapter 105, Oregon Laws 1943.

In my opinion, no language could more clearly declare that the property of an estate should escheat when there are no legal heirs. In the instant case, if it be proved that the son of the intestate feloniously killed intestate, then no other conclusion can be drawn than that because of such killing he was not a legal heir. A legal heir is one who has the right to inherit. Funk & Wagnall's Standard Dictionary defines an heir as "one who on the death of another becomes entitled by operation of law to succeed to the deceased person's estate as an estate of inheritance." *Nunner v. Erickson,* 151 Or. 575, 51 P. 2d 839; *Root v. Arnold,* 133 Or. 417, 290 P. 1095; *Jerman v. Jerman,* 129 Or. 402, 275

P. 915; *Connertin v. Concannon, et al.,* 122 Or. 387, 259 P. 290.

By statute, the son, if guilty of matricide, has no right to inherit; but his lack of heirship, which depends upon the provision of the statute, does not destroy his relation as a son or child of his mother which is controlled entirely by the law of nature.

I digress to mention that by legislative enactment of 1919, the county court and the office of county judge were abolished in all judicial districts comprising one county only of over 100,000; and the jurisdiction then vested in the county court was transferred to the circuit court. Section 93-310, O. C. L. A. pp. 484 and 485, and Section 13-208, O. C. L. A. p. 424.

Because the argument was made by counsel that the Probate Department of the Circuit Court of Multnomah County was without jurisdiction to determine whether an order of escheat should be made or to make such an order herein, I feel justified in saying that it is my opinion that it is not only within the jurisdiction of such court, but it is its duty to determine such question, and, if the son is shown not to be a legal heir in the sense that under the provisions of the law of this state he has no right to inherit, then it is equally the duty of that court to enter an order of escheat and forward the copies of the record to the state land board as expressly provided by the statute hereinabove quoted.

I find no ambiguity in the statute of descent and I find no ground for doubt as to what the legislature meant when it declared that an order of escheat should be made when to the estate of an intestate there is no legal heir; hence I cannot concur in the view of the majority that a construction or interpretation should

be given the statute of descent by which either the word qualified should be inserted before, or the phrase, having the legal right to inherit, should be inserted after, the word child in subdivision (2) and the words lineal descendants in subdivision (3) should be similarly construed.

Such interpolation, in my opinion, may be made only by the legislature.

Recurring to a consideration of the language of subdivision (6) of the statute of descent, which is as follows:

"If the intestate shall leave no lineal descendants or kindred, such real property shall escheat to the state of Oregon,"

I am of the opinion that the statute, declaring when an order of escheat should be made, clearly destroys the argument that because said subdivision (6) says that if there are no lineal descendants or kindred, the property shall escheat to the State of Oregon, it is necessary to conclude that if there are lineal descendants or kindred, even if there are no legal heirs, the property cannot escheat to the state.

With due respect for all who differ, it is my opinion that the provisions of the statute expressly declaring when the property of an intestate shall escheat to the state leaves no ground whatever for holding otherwise than in accordance with the express language of the escheat statute.

"The rule is, as we shall constantly see, cardinal and universal that if the statute is plain and unambiguous, there is no room for construction or interpretation. The Legislature has spoken; their intention is free from doubt, and their will must be obeyed." *Shellenberger v. Ransom,* 41 Neb. 631, 59 N. W. 935, 25 L. R. A. 564.

*State v. Hevelone* 92 Neb. 748, 139 N. W. 636, 638; *Wall v. Pfanschmidt,* 265 Ill. 180, 106 N. E. 785, L. R. A. 1915C 328, Ann. Cas. 1916A 674; *In re Carpenter's Estate,* 170 Pa. 203, 32 Atl. 637, 29 L. R. A. 145, 50 Am. St. Rep. 765; *McAllister v. Fair,* 72 Kan. 533, 84 Pac. 112, 3 L. R. A. (N. S.) 726, 115 Am. St. Rep. 233, 7 Ann. Cas. 973; *Owens v. Owens,* 100 N. C. 240, 6 S. E. 794; *Deem v. Milliken,* 53 Ohio St. 668, 44 N. E. 1134; *Holloway v. McCormick,* 41 Okla. 1, 136 Pac. 1111, 50 L. R. A. (N.S.) 536; *Gollnik v. Mengel,* et al, 112 Minn. 349, 128 N. W. 292; *De Graffenreid v. Iowa Land & Trust Co.,* 20 Okla. 687, 95 Pac. 624.

The first legislative enactment in Oregon on the subject of escheat is the one to which reference is made in the opinion of the court as being Section 1 of Chapter 15, General Laws of Oregon, 1845-1864.

The language of said Section 1 is as follows:

"§ 1. When any person shall die without heirs, leaving any real or personal property in this state, the same shall escheat to, and become the property of the state."

It became the law of this state by operation of the constitution, January 15, 1863.

By an act of the legislature approved February 21, 1887, Chapter XVI of the Miscellaneous Laws of Oregon, as compiled by Mathew P. Deady and Lafayette Lane, of which the foregoing section 1 was a part, was repealed. Section of this repealing act is as follows:

"Section 1. When any person shall die without heirs, leaving any real or personal property, in this State, the same shall escheat to and become the property of this State." Laws of Oregon, 1887,

p. 65; Section 5614, Vol. 2, Bellinger & Cotton's Annotated Codes and Statutes of Oregon, p. 1782.

By legislative enactment, approved February 18, 1903, this and other sections of Bellinger & Cotton's Annotated Codes and Statutes of Oregon were repealed.

Section 1, however, of the repealing act is as follows:

"Section 1. When any person shall die intestate without heirs, leaving any real, personal, or mixed property, interest or estate in this state, the same shall escheat to and become the property of this state." General Laws of Oregon 1903, p. 127.

In 1913, the legislature amended section 1 last above quoted, which had become Section 7363, Vol. 3, Lord's Oregon Laws, p. 2621.

Section 1, of the amendatory act of 1913, is as follows:

"Section 1. That section 7363 of Lord's Oregon Laws be amended to read as follows:

Sec. 7363. When any person shall die intestate without heirs, leaving any real, personal or mixed property, interest or estate in this State, the same shall escheat to and become the property of the State and clear proceeds derived therefrom shall be paid into and become a part of the common school fund of this State and be loaned as provided by law by the State Land Board; provided, however, that nothing in this act shall be construed as repealing any of the provisions of Section 7388 of Lord's Oregon Law." Chapter 344, General Laws of Oregon 1913, p. 688.

Section 7388 Lord's Oregon Laws provided that pension money of deceased inmates of the Oregon Soldiers Home, not claimed by personal representatives or heirs within three years from the death of such

pensioners, shall escheat to the state for the sole and exclusive benefit of the Oregon Soldiers Home.

In 1915, the legislature amended the amended section 7363 of Lord's Oregon Laws to read as follows:

"Sec. 7363. When any person shall die intestate without heirs, leaving any real, personal or mixed property, interest or estate in this State, the same shall escheat to, and become the property of the State and clear proceeds derived therefrom shall be paid into and become a part of the common school fund of this state and be loaned as provided by law by the State Land Board. The County Court before whom any probate matter is pending shall determine whether there are any legal heirs to said estate, and if it be determined by said Court that there are no legal heirs thereto, said Court shall order the administrator of said estate to transmit the clear proceeds thereof to the State Treasurer of the State of Oregon, and said administrator shall immediately pay over to said State Treasurer, all of such proceeds, and said Treasurer shall credit the same to the common school fund as other moneys received from escheats. Such administrator and his bondsmen shall be liable for the payment of such moneys to the State Treasurer; provided, however, that nothing in this Act shall be construed as repealing any of the provisions of Section 7388 of Lord's Oregon Laws." Chapter 191, General Laws of Oregon 1915, pp. 248 and 249.

The section last above quoted became Section 11-1201 of Oregon Code 1930, and was amended by the legislature in 1933 to read as follows:

"Section 1. That section 11-1201, Oregon Code 1930, be and the same hereby is amended so as to read as follows:

Sec. 11-1201. When any person shall die intestate without heirs, leaving any real, personal or

mixed property, interest or estate in this state, the same shall escheat to and become the property of the state and the clear proceeds derived therefrom shall be paid into and become a part of the common school fund of this state and be loaned or invested by the state land board, as provided by law. The county court, before whom any probate matter is pending, shall determine whether there are any legal heirs to said estate, and if it be determined by said court that there are no legal heirs thereto, said court shall order the administrator of said estate to serve upon the said state land board a true copy of the order of court directing that said proceeds shall escheat, together with a copy of the final account in said estate. The said state land board shall have three weeks from the date of service upon it of said copy of said final account in which to file its objections thereto, and after said final account has been approved by the court said administrator immediately shall pay over to said state treasurer all of such proceeds, and said treasurer shall credit the same to the common school fund as other moneys received from escheats. Such administrator and his bondsmen shall be liable for the payment of such moneys to the state treasurer; provided, however, that nothing in this act shall be construed as repealing any of the provisions of section 11-1221. The records of the state treasurer and of the state land board as to accounts paid to the state treasurer as escheats under this section, or pursuant to the provisions of any other act, shall be public records, but the said state treasurer and the said state land board shall grant access to such records to such persons only as shall reasonably show to the satisfaction of said treasurer and said board that they are interested parties in the contemplated recovery of particular escheated moneys.'' Section 1, Chapter 365, Oregon Laws 1933, p. 586.

At a special session in 1935, the legislature amended the section last above quoted to read as follows:

"When any person shall die intestate without heirs, leaving any real, personal or mixed property, interest or estate in this state, the same shall escheat to and become the property of the state and the clear proceeds derived therefrom shall be paid into and become a part of the common school fund of this state and be loaned or invested by the state land board, as provided by law. The county court, before whom any probate matter is pending, shall determine whether there are any legal heirs to said estate, and if it be determined by said court that there are no legal heirs thereto said court shall order the administrator of said estate to serve upon the said state land board a true copy of each order, motion, petition, or citation, and of the order of court directing that said proceeds shall escheat, together with a copy of the final account in said estate. No disbursements from said escheated estate in excess of the sum of $100 shall be made by any administrator until the state land board has been given 10 days from the date of service upon it of the order allowing such disbursements in which to file its objections thereto. The said state land board shall have three weeks from the date of service upon it of said copy of said final account in which to file its objections thereto, and after said final account has been approved by the court, said administrator immediately shall pay over to said state treasurer all of such proceeds, and said treasurer shall credit the same to the common school fund as other moneys received from escheats. Such administrator and his bondsmen shall be liable for the payment of such moneys to the state treasurer; provided, however, that nothing in this act shall be construed as repealing any of the provisions of section 11-1221. The records of the state treasurer and of the state land board as to amounts paid to the state treasurer as escheats under this sec-

tion, or pursuant to the provisions of any other act, shall be public records, but the said state treasurer and the said state land board shall grant access to such records to such persons only as shall reasonably show to the satisfaction of said treasurer and said board that they are interested parties in the contemplated recovery of particular escheated moneys. Chapter 12, Oregon Laws Special Session 1935, pp. 22 and 23. Section 21-101, Vol. 2, O. C. L. A. pp. 686 and 687.

In 1943, by legislative enactment, the section last above quoted was amended to read as follows:

"Section 1. That section 21-101, O. C. L. A., be and the same hereby is amended so as to read as follows:

Sec. 21-101. When any person shall die intestate without heirs, leaving any real, personal or mixed property, interest or estate in this state, the same shall escheat to and become the property of the state and the clear proceeds derived therefrom shall be paid into and become a part of the common school fund of this state and be loaned or invested by the state land board, as provided by law. The county court, before whom any probate matter is pending, shall determine whether there are any legal heirs to said estate, and if it be determined by said court that there are no legal heirs thereto said court shall order the administrator of said estate to serve upon the said state land board a true copy of each order, motion, petition, or citation, and of the order of court directing that said proceeds shall escheat, together with a copy of the final account in said estate. No disbursements from said escheated estate in excess of the sum of $100 shall be made by any administrator until the state land board has been given 10 days from the date of service upon it of the order allowing such disbursement in which to file its objections thereto. The said state land board shall have three weeks from the date of service upon it of said copy of said final

account in which to file its objections thereto, and after said final account has been approved by the court, said administrator immediately shall pay over to the state land board all of such proceeds, and said board shall credit the same to the common school fund as other moneys received from escheats. Such administrator and his bondsmen shall be liable for the payment of such moneys to the state land board. The records of the state treasurer and of the state land board as to amounts paid to the state land board as escheats under this section, or pursuant to the provisions of any other act, shall be public records, but the said state treasurer and the said state land board shall grant access to such records to such persons only as shall reasonably show to the satisfaction of said treasurer and said board that they are interested parties in the contemplated recovery of particular escheated moneys.'' Chapter 105, Oregon Laws 1943, p. 107.

My opinion is that continuously from the time the constitution of Oregon became effective there was and is now in the statutes of Oregon, a plain, unequivocal, unambiguous legislative declaration that when any person shall die intestate without heirs leaving an estate in Oregon, such estate shall escheat. This declaration of law has been repeated almost as fre· quently as a radio announcer's monotonous ''note from our sponsor.''

The mere fact that in subdivision (6) of the statute of descent, it is said that under the circumstances there mentioned, the property shall escheat, in my opinion, does not, nor should it be construed to abridge, limit or in any way modify or abrogate the oft repeated legislative pronouncement that when an intestate dies without heirs leaving property in this state, such property shall escheat to the state.

For these reasons, I dissent.