### HATCHER v. AETNA LIFE INS. CO. et al.
### Civ. No. 6187.

United States District Court
D. Oregon.
June 24, 1952.

William M. Langley, of Portland, Or., for plaintiff.

· Curtis W. Cutsforth, Portland, Or. (King, Wood, Miller, Anderson & Nash of Portland, Or., on the brief), for Aetna Life Ins. Co.

L. B. Sandblast, of Portland, Or., for additional defendant.

McCOLLOCH, District Judge.

This case presents a question under the Oregon "felonious death" statute, which forfeits the interest of a slayer in his victim's life insurance policies; the statute also provides for disinheritance. Section 16–203, O.C.L.A. There are similar statutes in about half the States and the District of Columbia. 49 Harv.L.Rev. 715.

Iowa seems to have enacted the first statute, in 1907. The Oregon Law, enacted ten years later, follows the Iowa statute closely. It reads:

"No person who feloniously takes or causes or procures another so to take the life of another shall inherit from such person, or receive any interest whatsoever in the estate of the decedent as surviving spouse, or take by devise or legacy from such deceased person any portion of his or her estate;

and no beneficiary of any policy of insurance or certificate of membership issued by any benevolent association or organization payable upon the death or disability of any person who in like manner takes or causes or procures to be taken the life upon which such policy or certificate is issued, or who causes or procures a disability of such person, shall take the proceeds of such policy or certificate; but in every instance mentioned in this section, all benefits that would accrue to any such person upon the death or disability of the person whose life is thus taken or who is thus disabled shall become subject to distribution among the other heirs of such deceased person according to the rules of descent and distribution in case of death as now provided by law, and in case of disability the benefits thereunder shall be paid to the disabled person. Provided, however, that an insurance company shall be discharged of all liability under a policy issued by it upon payment of the proceeds in accordance with the terms thereof unless before such payment the company shall have written notice by or on behalf of some claimant other than the beneficiary named in the policy that a claim to the proceeds of such policy will be made by the heirs of such deceased or disabled person under the provisions of this act." Section 16–203, O.C.L.A.

Few cases have arisen under the statute, and none helpful to the decision of the present case, which involves the knife slaying of a young Negro by his still younger wife, beneficiary of his life insurance policies.

Through court decisions a body of law had been building up for a number of years, based on the maxim that a wrongdoer should not be allowed to profit by his own wrong. Somewhat strangely, the life insurance cases and the cases which involved rights to inherit property, had taken divergent courses. It was held (without exception, I believe) that an intentional killer could not claim as beneficiary under his victim's life insurance policies. Mutual

810

Life Ins. Co. **v.** Armstrong, 117 U.S. 591, 6 S.Ct. 877, 29 L.Ed. 997, was an early case.

On the other hand, the courts were slow to hold, without the aid of a statute, that a slayer, even a willful, intentional one, was, because of his crime, disqualified to take as an heir of his victim. Holloway v. McCormick, 1913, 41 Okl. 1, 136 P. 1111, 50 L.R.A.,N.S., 536 was a typical case. Recent *murder* cases: Beck v. Downey, 9 Cir., 191 F.2d 150, remanded for further consideration 343 U.S. 912, 72 S.Ct. 646; Id., 198 F.2d 626. Beck v. West Coast Life Insurance Co., Cal.App., 228 P.2d 832, Id., Cal. Sup., 241 P.2d 544. Matter of Duncan v. Schoeffler, Wash., 246 P.2d 445.

■ Beginning, as I say, in Iowa, in 1907, statutes were enacted. The statutes are phrased differently, and they do not all, as in Iowa and Oregon, throw inheritance and insurance together.[1]

In the case at hand I must pass on the criminal nature of claimant wife's conduct. Plaintiff's mother-in-law, contesting for the insurance, asserts that she was an eyewitness to her son's death, and that plaintiff stabbed him. The death occurred Christmas Eve, 1950, following a drunken quarrel.

I accept the following part of plaintiff's story: that she did not stab her husband; that he pursued her across the room, and that he fell against the knife which she was holding out to keep him from striking her. But I do not think the circumstances called for the display of a knife, and I find that plaintiff committed manslaughter under the Oregon "culpable negligence" statute. Section 23-410 O.C.L.A., as Am. L.1941, Ch. 439, Section 2: "Every other

killing of a human being by the act, procurement, or culpable negligence of another, when such killing is not murder in the first or second degree, or is not justifiable or excusable or negligent homicide as provided in this chapter, shall be deemed manslaughter."

The District Attorney of Multnomah County evidently regarded plaintiff's conduct as serious, for he indicted her for manslaughter, later, however, accepting a plea of guilty of "Assault with dangerous weapon". Section 23-431, O.C.L.A. (a felony).

Counsel for the mother-in-law makes the argument that plaintiff's guilty plea constitutes an admission that the homicide was "felonious". He asks, how can one plead guilty to a felony and not be deemed to have admitted that she was guilty of felonious conduct? Let me state here that the judge who took plaintiff's guilty plea, placed her on probation for three years, and probation is her present status.

To those interested to pursue the intricacies of when a felony is not felonious, the fact of probation in this case introduces another intriguing factor; for, by the statute,[2] a felony ceases to be a felony when the punishment imposed is less than a penitentiary sentence. But to get back to the problem for decision.

Plaintiff's act, which I have adjudged to be manslaughter, would not have forfeited her rights to her husband's insurance by the decisions preceding the era of statutes. Only one who slayed intentionally and wrongfully was barred.

Does the statute compel a different result? Because plaintiff committed a stat-

[1.] It will not escape attention that where, as in this State, a single statute has been passed to cover both life insurance and inheritance of property, the approach to interpretation of the statute is somewhat different than in the situation where insurance and inheritance have been kept as separate subjects.

If, as held here, death, because of negligent conduct, does not work a forfeiture of life insurance, all the more, semble, it should be held not to result in disinheritance.

[2.] "A felony is a crime which is punishable with death, or by imprisonment in the penitentiary of this state. When a crime punishable by imprisonment in the penitentiary is also punishable by a fine or imprisonment in a county jail, in the discretion of the court, it shall be deemed a misdemeanor for all purposes after a judgment imposing a punishment other than imprisonment in the penitentiary." Section 23-103, O.C.L.A.

utory felony, was her conduct "felonious", within the meaning of the disinheritance and forfeiture statute? On questions like these non-lawyers despair of us.

The question can be approached historically; it can be approached semantically. After reflection, I have concluded to decide it functionally. Cardozo, The Growth of the Law, p. 62.

Would the Oregon courts hold that a son whose reckless driving caused his parents' death, could not inherit from the parents? I think not. Would the Oregon courts hold that a wife, whose negligent driving of the family automobile caused her husband's death, forfeited her claim as beneficiary under her husband's life insurance policies? I feel sure they would not rule that way.[3]

I hold then, that plaintiff's homicide of her husband, though wrongful, and a felony under the Oregon Criminal Code,[4] did not constitute "felonious taking" of her husband's life, within the meaning of the Disinheritance and Forfeiture statute.[5]

Judgment for plaintiff.

3. Cf. Hull v. Metropolitan Life Ins. Co., 1916, 26 Pa.Dist.R. 197; Minasian v. Aetna Life Ins. Co., 1936, 295 Mass. 1, 3 N.E.2d 17.

4. As affecting the inheritance of property or forfeiture of insurance, I do not see how any distinction can be made among the various kinds of "involuntary" manslaughter: 23–406, O.C.L.A.—death while engaged in the commission of an unlawful act or because of want of "due caution or circumspection"; 23–410, O.C.L.A.—death resulting from "culpable" negligence; 23–410a, O.L.C.A.—death as the result of driving a motor vehicle "in a negligent manner". (All as amended L. 1941, Ch. 439).

All are felonies, because punishable by imprisonment in the penitentiary. N.2. But in the last case, 23–410a—death from negligent operation of a motor vehicle, because sentence *may* be less than confinement in the penitentiary, if such lesser sentence be imposed, the crime is reduced from felony to misdemeanor. N.2.

Query—in the case of death from negligent auto operation, if there has been no criminal prosecution, or if there has been a criminal prosecution, but no conviction, what is the situation thus created?

5. The Iowa courts have held that their statute, from which the Oregon statute was copied, applies only to insurance issued by benevolent organizations. Kascoutas v. Federal Life Ins. Co., 1920, 189 Iowa 889, 179 N.W. 133. And see Schmidt v. Northern Life Association, 1900, 112 Iowa 41, 83 N.W. 800, 51 A.L.R. 141.

Justice Kelly of the Oregon Supreme Court, in a passing remark, seemed to think the Oregon statute, like the Iowa statute, applied only to benevolent organizations, i. e. did not apply to commercial life insurance companies. In re Norton's Estate, 175 Or. 115, 123, 151 P.2d 719, 156 A.L.R. 617. I leave this question to the Oregon courts. The insurance in the case at bar was in commercial companies. The result here would be the same without the statute.