Argued June 29, reversed and remanded September 9, 1955

# APITZ *v.* DAMES
### 287 P. 2d 585

*Ervin B. Hogan* and *Philip B. Lowry,* of Medford, argued the cause for appellant. On the brief were Neff, Frohnmayer & Lowry, of Medford.

*Robert B. Duncan,* of Medford, argued the cause for respondent. With him on the brief were McAllister, Duncan & Brophy, of Medford.

Before WARNER, Chief Justice, and TOOZE, LUSK, BRAND, LATOURETTE and PERRY, Justices.

BRAND, J.

The plaintiff brings this action as executor of the estate of Esther C. Joss, deceased, against the defendant as administrator, with the will annexed, of the estate of Forest G. Joss, deceased, who was the husband of Esther C. Joss. Forest G. Joss wrongfully and intentionally shot and killed his wife Esther Joss, and

shortly after her death, killed himself. Upon the basis of these facts the plaintiff, as executor for the benefit of the estate, seeks to recover damages in the sum of $15,000, under the provisions of the Oregon Wrongful Death Statute. Esther C. Joss and her husband both died on the 7th of December 1951. Esther C. Joss left surviving her no dependents. The complaint adequately sets forth the murder of the wife, the suicide of the husband, the damage to the wife's estate, and the absence of any dependents of the deceased wife. To this complaint a demurrer was sustained. The plaintiff refused to plead further and the cause was dismissed. The plaintiff appeals.

The question presented upon this appeal is one of first impression in this state and is of great importance to the profession. We have this day decided the case of *Smith v. Smith,* wherein the plaintiff wife sued her husband for damages occasioned by the alleged grossly negligent conduct of her husband in the operation of an automobile, wherein the plaintiff was a guest. By that decision it has been determined that a wife can not sue her husband for negligent or grossly negligent conduct.

In the pending case we must determine whether the same rule of nonliability for tort applies when intentional injury is done by the husband to the person of the wife, amounting in this case to murder, and the action is for the benefit of the estate of the wife. It is the contention of the plaintiff that the common-law doctrine of immunity to liability has no application to actions for personal injury between husband and wife based upon a wilful and malicious tort. The plaintiff alleges that the shooting of the deceased wife was intentional and we shall consider the issue presented as bearing upon liability for intentional harm to the per-

son. As a second string to his bow, the plaintiff contends that the Oregon Wrongful Death Statute creates a new and independent cause of action and is not a survival statute. He therefore argues that an action for wrongful death may be maintained by the executor of the deceased wife against the husband or his representative, irrespective of any immunity which might have existed had the wife survived, since, he contends, the disability of the wife to sue her husband is personal to her and does not extend to the new and independent action created by the Wrongful Death Statute. If we hold that the law of Oregon gives to a wife cause of action against her husband for an intentional tort, or that the Death Statute gives such a right to her representative, a further question is presented by the record under the terms of the Death Statute.

The wife died leaving no dependents, but she did die leaving a husband who murdered her. The question for consideration, therefore, is whether under the terms of the statute the executor of the estate of the deceased wife can bring this action for the benefit of the estate, when the statute names the "widower" as a beneficiary and provides that the action shall be brought for the benefit of the estate only if there "is no widow or widower." The plaintiff contends that where a husband murders his wife, and the wife leaves no surviving dependents, the cause of action for her wrongful death vests immediately upon her death in her personal representative for the benefit of her estate. The defendant, on the contrary, contends that a wrongful death action for the benefit of the estate may be maintained only if there is no widower or dependents who survive the decedent. The question then is, whether the fact that the husband who killed his wife survived her for a few moments or hours renders impossible

an action by the executor for the benefit of the estate. The statutes in force at the time of the murder provided, in part, that

"A cause of action arising out of an injury to the person dies with the person of either party, except as provided in sections 8-903 and 8-904 * * *." OCLA, § 8-901 as amended by Laws of 1945, chapter 41.

"All other causes of action, by one person against another, whether arising on contract or otherwise, survive to the personal representatives of the former and against the personal representatives of the latter. Where the cause of action survives as herein provided, the executors or administrators may maintain an action at law thereon against the party against whom the cause of action accrued, or after his death against his personal representatives." OCLA, § 8-902.

"When the death of a person is caused by the wrongful act or omission of another, the personal representatives of the former for the benefit of the widow or widower and dependents and in case there is no widow or widower, or surviving dependents, then for the benefit of the estate of the deceased may maintain an action at law therefor against the latter, if the former might have maintained an action, had he lived, against the latter, for an injury done by the same act or omission. Such action shall be commenced within two years after the death, and damages therein shall not exceed fifteen thousand dollars ($15,000)." OCLA, § 8-903 as amended by Oregon Laws 1949, chapter 518.

"Causes of action arising out of injury to the person or death, caused by the wrongful act or negligence of another, shall not abate upon the death of the wrongdoer, and the injured person or the personal representatives of one meeting death, as above stated, shall have a cause of action against the personal representatives of the wrongdoer; provided, however, that the injured person shall not recover judgment except upon some competent

satisfactory evidence other than the testimony of said injured person; and provided further, that the damages recoverable under the provisions of this act shall not exceed fifteen thousand dollars ($15,000)." OCLA, § 8-904 as amended by Oregon Laws 1949, chapter 519.

■ It is true, as contended by the plaintiff, that the Death Statute creates a new right and a new liability. It is not a survival statute. *Perham v. Portland Electric Co.*, 33 Or 451, 53 P 14. However, the statute sets forth a condition precedent to the right to bring the action. It may be brought if the former (the wife) might have maintained an action, had she lived, against the latter (the husband) for an injury done by the same act or omission.

There are plausible and somewhat persuasive cases which would tend to support recovery under the Death Statute even if we were to hold that a living wife can not sue her husband for an intentional injury to the person. In *Deposit Guaranty Bank & Trust Co. v. Nelson*, 212 Miss 335, 54 So2d 476 (1951), the husband shot and killed his wife. The daughter of the deceased brought action against the murderer under the provisions of the Mississippi Death Statute, which provided in part as follows:

"Whenever the death of any person shall be caused by any real wrongful * * * act * * * as would, if death had not ensued, have entitled the party injured * * * to maintain an action * * * and such deceased person shall have left a widow or children, or both, or husband * * * the person * * * that would have been liable if death had not ensued * * * shall be liable for damages * * *."

The defendant contended that the wife, if she had lived, could not have recovered from her husband under *Aus-*

*tin v. Austin,* 136 Miss 61, 100 So 591, 33 ALR 1388 (1924) and that therefore, the statutory beneficiary also had the same disability. Answering this contention, the court said:

"* * * the disability of the wife to sue is one personal to her, and does not inhere in the tort itself. The assault upon her is wrongful even though she is under a personal disability to sue. The reasons for the rule of immunity between husband and wife do not exist where the husband kills his wife and thus destroys the marital relationship. Second, the statutory beneficiary has a new cause of action, independent of that of the deceased if she had survived, provided the defendant is chargeable with a wrongful act. The suit is derived from the tortious act not from the person of deceased. And third, the stated condition in the statute has no reference to the person entitled to sue but only to the sufficiency of the circumstances attending the injury and the nature of the wrongful act. That is, the defendant must be chargeable with a wrongful act."

The court also said:

"* * * To extend the tort-feasor's immunity to a new cause of action by the survivors of the deceased wife would apply the immunity rule to a situation never contemplated in its creation and wholly irrelevant to its reasons. The immunity must be confined to cases where its purposes can practically operate. That is impossible here because the tort was of such violence as to end the marital relationship."

It was held that the plaintiff might maintain action for the death of her mother, although the mother would not have been able to maintain an action against her husband if she had lived.

*Rodney v. Staman,* 371 Pa 1, 89 A2d 313, 32 ALR2d 976, strongly supports the ruling in *Deposit Guaranty*

*Bank & Trust Co. v. Nelson,* supra. Husband and wife were traveling by automobile in Ohio. In an accident both were instantly killed. The administrator of the wife's estate, on behalf of two surviving children, sued the husband's estate in Pennsylvania for the mother's wrongful death. The controlling Ohio statute declared that the act causing the death must be "such as would have entitled the party injured to maintain an action and recover damages in respect thereof, if death had not ensued." As in the preceding case, the defendant contended that in Ohio the personal disability arising from the marital relationship barred action under the Death Statute. The Pennsylvania court then cited Ohio decisions demonstrating that its Wrongful Death Statute gives rise to an independent action accruing only upon death.

The court said:

"In Pennsylvania, where the right of action is deemed derivative, a suit for wrongful death is not barred because of the given relationship. While our Wrongful Death Act does not contain the above-quoted words of the Ohio Statute, which were taken directly from Lord Campbell's Act (9 and 10 Vict, c 93 Sec 1), ' * * * we, in common with most jurisdictions have hitherto interpreted our statute as if worded in the same manner * * *'. Kaczorowski v. Kalkosinski, 321 Pa 438, 440, 184 A 663, 664, 104 ALR 1267. After noting in the Kaczorowski case that 'We have announced the principle that the statutory action is derivative because it has as its basis the same tortious act which would have supported the injured party's own cause of action * * *', we immediately went on to describe the source of the action as follows: 'Its derivation * * * is from the tortious act, and not from the person of the deceased, so that it comes to the parties named in the statute free from personal

disabilities arising from the relationship of the injured party and tortfeasor.' Since suit for wrongful death is not barred because of personal relationship where the action is held to be derivative, a fortiori, it will not be so barred where the action is independent, as in Ohio, and we so hold.

"The public policy which prevents a wife from suing her husband in tort has no relevancy to facts such as are here present. \* \* \*''

The same rule under a statute similar to our own was applied in *Welch v. Davis,* 410 Ill 130, 101 NE2d 547, wherein it was said:

"We hold this action by the administrator to recover damages for the pecuniary loss suffered by the minor dependent daughter of Anna Davis is not within the contemplation of the common-law rule that a wife cannot sue her husband. Accordingly, the administrator of the wife's estate may maintain the present statutory action for wrongful death which derived from the wrongful act causing the death rather than from the person of the deceased."

There are other cases tending to support the view that an action may be maintained under the Death Statute, even though the wife, if living, could not have sued her husband. They are somewhat weakened by the fact that the Death Statute did not contain a provision that recovery may be had *"if the party injured might have maintained the action had he lived." Russell v. Cox,* 65 Idaho 534, 148 P2d 221; *Kaczorowski v. Kalkosinski,* supra, 321 Pa 438, 184 A 663.

In *Johnson v. Ottomeier,* 45 Wash2d 419, 275 P2d 723 (1954), the husband murdered the wife and committed suicide. The question was whether the wife's personal representative had a cause of action against the husband's estate under the Death Statute. The

statute did not expressly make the right to sue dependent upon the right of the deceased to have maintained the action had she lived, but the Washington court had twice held that such condition was implied. The court said:

> "It is true that, in construing this act, we have held that the action may be maintained 'where the deceased might have maintained it had he lived.' Welch v. Creech, 88 Wash. 429, 435, 153 P. 355, 357, L.R.A. 1918A, 353. Or, as we stated in Ostheller v. Spokane & Inland Empire R. Co., 107 Wash. 678, 182 P. 630, the action is 'dependent upon the right the deceased would have to recover for such injuries up to the instant of his death'. 107 Wash. at page 681, 182 P. at page 632."

The Washington court, in harmony with our own decisions, held that the Death Statute creates a new cause of action. But it went on to say that the cause is derivative only in the sense that it derives from the wrongful act causing the death rather than from the person of the deceased. The court said that the wife's disability to sue is personal to her "and does not inhere in the tort itself" and necessarily disappears with her death. The court observed that the provision for recovery "where the deceased might have maintained an action had he lived  *  *  *" was previously a part of the statute but was no longer a part thereof. The court said:

> "Were this language now in the act, there would possibly be some statutory basis for the particular rule of exclusion respondent advocates. See Wilson v. Brown, Tex. Civ. App., 154 S.W. 322; Demos v. Freemas, 43 Ohio App. 426, 183 N.E. 395; Wright v. Davis, 132 W.Va. 722, 53 S.E.2d 335. Even with this kind of language in the act, however, at least two courts have held that a deceased wife's personal representative may sue the husband for her

wrongful death. Deposit Guaranty Bank & Trust Co. v. Nelson, supra; Rodney v. Staman, supra.''

The Washington court apparently recognized that there may be a fallacy in the reasoning of those courts which first hold to the ancient common-law rule that a wife can not sue her husband for tort during her lifetime, but that under Death Statutes similar to the one in Oregon recovery may be had.

Whether the cases which would deny to a living wife the right of action against her husband for intentional injury and yet would at the same time affirm the right of the representative of a deceased wife to sue under the Death Statute are right or wrong, they do manifest a growing anxiety on the part of the courts to find a remedy by some process of reasoning for the named beneficiaries when a wife has been killed by her husband. In our opinion these cases are not in harmony with the better-reasoned cases in which a death statute similar to our own was the subject of construction. We think that the Oregon Death Statute means exactly what it says and that the remedy thereby given is available only if the ''former'' (the deceased wife) might have maintained an action, had she lived, against the ''latter'' (the guilty husband) for an injury done by the same act.

The Washington court argued that the disability ''does not inhere in the tort itself'', but the question is whether there is any tort when husband assaults wife. To be sure, there is a crime, but the question remains whether the disability was merely procedural or whether under the ancient common-law rule there was no substantive right, i.e., whether there was any ''tort''.

In a careful review of the early common-law rule, the Supreme Court of Mississippi said:

"* * * The wife's disability to sue the husband was not alone for the lack of a remedy. That was merely incidental. It was for the lack of any cause of action. Therefore, in order to remove any disability of coverture affecting her right to sue, it was necessary to confer a right of action on her. Giving her a remedy to sue was not sufficient. * * *" *Austin v. Austin,* 136 Miss 61, 100 So 591, 33 ALR 1388.

To the same effect see the well-considered case of *Wilson v. Brown,* Tex Civ App, 154 SW 322, where it was directly held that there could be no recovery under the death statute unless the deceased could have maintained an action had he not died.

The following cases indicate that the early common-law rule did not merely disable the wife to sue her husband for tort. It went further and held that actions which between strangers would be tortious, were not torts when committed by husband against wife. That is to say—disability was not procedural only. The wife at ancient common law had no cause of action on which to sue. *Harvey v. Harvey,* 239 Mich 142, 214 NW 305; *Wright v. Davis,* 132 WVa 722, 53 SE2d 335; *Thompson v. Thompson,* 218 US 611; *Libby v. Berry,* 74 Me 286; *Drake v. Drake,* 145 Minn 388, 177 NW 624; *Kennedy v. Camp,* 14 NJ 390, 102 A2d 595; *Conley v. Conley,* 92 Mont 425, 15 P2d 922; McCurdy, Torts Between Persons in Domestic Relations, 43 Harv L Rev 1030, 1044.

■ In *Cowgill, Adm'r v. Boock, Adm'r,* 189 Or 282, 218 P2d 445, the plaintiff as administrator of the estate of Billie Parker, deceased, brought an action under

the Death Statute against the administrator of the estate of George W. Parker who was Billie's father. The cause was based upon the alleged gross negligence of the father in operating an automobile. Both father and minor son were killed in the wreck. This court, by an in banc decision, affirmed judgment for the plaintiff. It was held that the Death Statute, OCLA, § 8-903:

> "* * * created a new right of action for wrongful death with limitation, '* * * if the former [decedent] might have maintained an action, had he lived, against the latter [wrong-doer], for an injury done by the same act or omission.' If the decedent Billie Parker could have maintained an action, had he lived, against his father for an injury 'done by the same act or omission,' then the present action will lie; otherwise, it can not be maintained."

This, we take it, amounted to a construction of the Death Statute, and a holding under that statute, not merely that there must have been an act which would have constituted a tort if committed between strangers, but that there must have been an act on which the "former [the deceased] might have maintained an action had he lived." The case will receive further consideration in another connection.

In *Wright v. Davis,* supra, 132 WVa 722, 53 SE2d 335, husband and wife were living apart. The wife sued her husband for divorce. Thereupon the husband murdered his wife and then killed himself. The administrator of the wife sued the administrators of the husband under a death statute similar to our own. The decision is adverse to the contention of the plaintiff that a wife can sue her husband for intentional injury, but it directly supports our conclusion that a death action can not be maintained under our statute unless

the deceased could have maintained an action if death had not ensued. The court said:

"* * * As the wife, Nellie Marie Yost, could not have maintained an action at law against her husband for damages for her injury if it had not resulted in her death, her personal representative can not maintain this action against his personal representatives for damages for her wrongful death."

We now proceed to the consideration of the principal question in the case, namely; could the wife have sued the husband for intentionally shooting her if the result had not been fatal. If it be determined by judicial decision that the wife could have sued her husband, then we recognize that the same rule would apply for the benefit of either husband or wife if attacked by the other, for no statute has given to either husband or wife the right to bring such an action, and at early common law neither could sue the other for intentional tort. *Roberts v. Roberts*, 185 NC 566, 118 SE 9, 29 ALR 1479; 27 Am Jur, Husband and Wife, § 589, p 191. The cause of action, if found to exist, must be grounded upon common-law principles equally applicable to husband or wife. See *Smith v. Smith*, 205 Or 286, 287 P2d 572.

As we demonstrated in *Smith v. Smith*, supra, many decisions favoring the right of a wife to sue her husband for tort have arrived at that conclusion, in part at least, by the process of statutory construction. However, the same courts have not hesitated to support the right of recovery upon common-law principles, especially when dealing with intentional torts.

In *Brandt v. Keller*, 413 Ill 503, 109 NE2d 729, recovery was allowed on the basis of the Married Women's Act (dissimilar to ours), but the court con-

demned the common-law doctrine that tort actions would destroy "domestic tranquillity", and said:

> "The fallacy of this public policy rationale has been expostulated by numerous jurists. Brown v. Brown, 88 Conn. 42, 89 A.889; Lorang v. Hays, 69 Idaho 440, 209 P.2d 733; Crowell v. Crowell, 180 N.C. 516, 105 S.E. 206. It is ably expressed by the dissenting opinion in Mertz v. Mertz, 271 N.Y. 466, 3 N.E.2d 597, 601, 108 A.L.R. 1120, wherein it was stated: 'It is enough to say that the rule exists merely as a product of judicial interpretation, is vestigial in character, and embodies no tenable policy of morals or of social welfare. To urge that it survives because it is an aid to conjugal peace disregards realty. * * *' * * *'"

*Brandt v. Keller* was an action for "wilful and wanton tort."

In *Courtney v. Courtney,* 184 Okla 385, 87 P2d 660, the court held that a wife might sue her husband for negligent tort. But the court quoted with approval from *Schultz v. Schultz,* 27 Hun 26, the following pertinent observation concerning actions for intentional wrongs:

> " 'It is not regarded as discourteous to say that the ill treatment of the wife by the husband, which consists in the violence of an assault and battery, is more destructive to conjugal union and tranquillity than the declaration of a right in the wife to maintain an action against her husband for an assault and battery upon her would be. It is not at all unlikely that it would operate as a restraint upon militant husbands disposed to indulge in such evidence of conjugal union and tranquillity. " ' * * * * * *' "

In *Brown v. Brown,* 88 Conn 42, 89 A 889, plaintiff wife sued her husband for assault and battery. The Connecticut court considered the general effect of the Married Women's Acts and concluded that the legal

identity of husband and wife had been destroyed and
that she might sue. But the court also supported its
decision on common-law principles. We quote:

> " * * * If she may sue him for a broken prom-
> ise, why may she not sue him for a broken arm?
> * * * "

Again the court said:

> " * * * When the purposes of the marriage
> relation have wholly failed by reason of the mis-
> conduct of one or both of the parties, there is no
> reason why the husband or wife should not have
> the same remedies for injuries inflicted by the other
> spouse which the courts would give them against
> other persons. * * * "

*Brown v. Gosser* (Ky) 262 SW2d 480 (1953) was
a damage action by a wife against her husband for
negligent operation of an automobile, committed be-
fore coverture. The action was commenced before the
parties were married. Judgment for plaintiff was
affirmed. The court recognized that the weight of
authority supported the old common-law rule of non-
liability and admitted that in Kentucky stare decisis
"supports his [the defendant's] position", but it then
quoted words of Justice Brandeis in *State of Wash-
ington v. Dawson & Co.,* 264 US 219, as follows:

> " 'Stare decisis is ordinarily a wise rule of ac-
> tion. But it is not a universal, inexorable command.
> The instances in which the court has disregarded
> its admonition are many.' "

The Kentucky court then said:

> "Our consideration of the question convinces
> us that the minority rule is more in keeping with
> modern though and the later cases on the subject.
> * * * "

For reasons stated by us in *Smith v. Smith,* we
are not now prepared to adopt the minority rule in

cases of negligent operation of a motor vehicle. But the reasoning in *Brown v. Gosser,* supra, and other similar cases applies with far greater force in cases involving an intentional personal injury. Furthermore, *Brown v. Gosser* may be supported consistently with our decision in *Smith v. Smith,* because at the time action was brought the plaintiff was single when injured and had acquired a substantive right of action of which she should not be deprived by a statute which operated upon her only after her right had been acquired.

In *Johnson v. Johnson,* 201 Ala 41, 77 So 335, the wife sued her husband for assault and battery. Judgment for plaintiff was affirmed. The court said:

> "* * * The wife's remedies by a criminal prosecution or an action for divorce and alimony, which in some jurisdictions are allowed to stand as her adequate remedies, for wrongs of the sort described in this complaint, so far from being adequate remedies, appear to us to be illusory and inadequate, while, as for the policy which would avoid the public airing of family troubles, we see no reason why it should weigh more heavily against this action than against those which the courts universally allow."

See also, *Harris v. Harris,* 211 Ala 222, 100 So 333. In that case a wife recovered damages against her husband for assault and battery.

In *Fiedler v. Fiedler,* 42 Okla 124, 140 P 1022, the defendant husband was held liable in damages for shooting his wife. Recovery was allowed on the authority of statute. The court then proceeded on principle to condemn the ancient common-law rule of nonliability. We quote:

> "* * * upon the whole, we are unable to perceive wherein either public policy, or society, or

the sanctity of the home, or the sacred relations of marriage, is better protected by denying her a reasonable compensation for injuries maliciously and feloniously inflicted upon her by a husband with a shotgun loaded with buckshot, or that either of the aforesaid sacred institutions is worse injured by allowing her a just and reasonable compensation in such cases, than to allow her to go into the criminal courts and send him to the penitentiary, or into a divorce court and publish their entire married life to the world.''

In *Crowell v. Crowell*, 180 NC 516, 105 SE 206, a wife sued her husband for assault and battery committed by infecting her with a venereal disease. The court construed the statute as permitting the action, but also supported recovery upon common-law grounds. We quote:

''Whether a man has laid upon his wife's head with a bludgeon, put out her eye, broken her arm, or poisoned her body, he is no longer exempt from liability to her on the ground that he vowed at the altar to 'love, cherish, and protect' her. We have progressed that far in civilization and justice. Never again will 'the sun go back ten degrees on the dial of Ahaz'. Isaiah, 38:8.''

In *Steele v. Steele*, 65 F Supp 329, a wife sued her husband for assault committed after a decree of divorce but before the decree became effective. The court felt itself bound by the majority opinion in *Thompson v. Thompson*, 218 US 611, in which it was held that a wife could not sue her husband for tort. The decision in the Thompson case was severely criticized and the court said:

''Originally, at common law, a man had a legal right to beat his wife provided he did not do so to excess. As was felicitously observed, however, by a master of the law, with a touch of poetry and

imagery so characteristic of him, 'The inn that shelters for the night is not the journey's end. The law, like the traveler, must be ready for the morrow. It must have a principle of growth.' * * * ''

The court added:

"It may well be that it is time for Justice Cardozo's traveler again to leave the shelter of the inn and to resume his journey, and perhaps to reach the next stage at which the remaining shackles on the wife's rights to resort to legal process for the vindication of her rights, will be entirely abrogated. * * * ''

The court then proceeded to distinguish the Thompson case, and held that although the marriage was not entirely dissolved, yet the status of husband and wife lacked its original character. It was therefore held that the defendant's motion for summary judgment be denied. It should be noted that in *Thompson v. Thompson,* supra, the Supreme Court supported the ancient common-law rule, but there was a momentous dissent by Justices Harlan, Holmes and Hughes.

In *Franklin v. Wills,* 217 F2d 899 (Tenn 1954), recovery was allowed by the Federal Court in an action brought by the wife for damages on account of negligent operation of an automobile by her husband. The court made it clear that no unity of the marriage state could be affected here for the reason that the union had been dissolved by the death of the husband. The action was, of course, brought against the administrator of the estate of the husband.

In *Davis v. Smith,* (Pa 1954) 126 F Supp 497, the minor son of the deceased and the widow of the deceased husband, brought action against the administrator of the estate of the deceased husband for damage resulting from his negligent operation of an automobile.

The court held that the decision was controlled by the law of Pennsylvania where the doctrine of interfamily unity had prevailed. The court reviewed the authorities and then said:

"In reviewing the foregoing decisions, a policy and trend in the law become clear. Basically, there is a feeling that injustice results from a broad and complete application of the doctrine of parental immunity as a bar to any suit against a parent for personal injury to the child. Confronted with a large body of law based on the authority of the Hewlett, McKelvey and Roller cases, the court must face with reluctance a decision to overrule this heretofore established law. On the other hand where right and equity compel, it should not assist in perpetuating a doctrine which is, in large part, inhumane and unjust in our changing mode of life. This the authorities recognize. Cowgill v. Boock, 1950, 189 Or. 282, 218 P.2d 445, 19 A.L.R.2d 405; Rozell v. Rozell, 1939, 281 N.Y. 106, 22 N.E.2d 254, 123 A.L.R. 1015 (suit between siblings); Worrell v. Worrell, supra; Lo Galbo v. Lo Galbo, 1930, 138 Misc. 485, 246 N.Y.S. 565." 126 F. Supp 497, 503.

It was held that:

" * * * Thus where a parent or child dies or the entire family unit is dissolved, there is then no relationship that public policy need protect; the reason for the doctrine is gone and the cloak of immunity disappears. * * *" 126 F Supp 497, 506.

A similar ruling was made concerning the right of the widow to sue the estate of her deceased husband. The court concluded as follows:

"It is the opinion of this Court that the family immunity doctrine under Pennsylvania law, whatever may be its validity as *between members of a living family relationship,* whether husband and wife or parent and child, *does not extend beyond*

*the life of a family member* protected thereby and is not available to his estate.'' 126 F Supp 497, 508.

The erosion of the common-law rule is well-illustrated in *Lorang v. Hays,* 69 Idaho 440, 209 P2d 733. In that case the plaintiff wife sued her husband and others for assault and false imprisonment. The parties were living apart at the time of the assault and thereafter were divorced, before the action for damages was brought. Obviously there is no validity to the argument that the domestic felicity of the home would be destroyed by the action. The court said:

> ''The immunity of a husband from suit by a wife was based on public policy of preserving domestic peace and felicity. Broaddus v. Wilkenson, 281 Ky. 601, 136 S.W.2d 1052; 41 C.J.S., Husband and Wife, § 396, p 878.
>
> \* \* \* \* \*
>
> '' \* \* \* Many courts of last resort in their recent decisions hold that the action may be maintained, particularly when the spouses are separated, and that the husband is liable for a willful tort committed against the person of his wife.''

Another well-considered case supporting the right of a wife to sue her husband for tort is *Damm v. Elyria Lodge No. 465,* 158 Ohio St 107, 107 NE2d 337.

It is undoubtedly true, as indicated by the court, that there is a two-fold basis for the common-law rule of immunity; first, the technical effect of the unity of husband and wife; and second, ancient concepts of public policy inherited from the feudal era whereby it was held that actions between husband and wife must not be permitted because they would destroy the domestic peace and felicity of the home. When it is recognized that the ancient concept of the legal unity of husband and wife has been eroded beyond recogni-

tion, and when the facts are such that there remains no domestic peace and felicity to be protected, we are impelled to inquire whether it may not be within the function of a common-law court to hold that the basis for the rule of immunity having been removed, the rule itself must fall.

A numerical check of the decisions undoubtedly shows that the weight of authority still denies the right of either spouse to sue for negligent tort, and perhaps for intentional wrong, and it further appears that those courts which have broken away from the common-law rule have relied, ostensibly at least, upon construction of the many and varied married women's acts, although they have also supported recovery on principle. Cases supporting the majority rule of nonliability are listed in *Brown v. Gosser,* supra, Ky, 262 SW2d 480, and even in the case of intentional harm, the ancient rule has been supported. See *Thompson v. Thompson,* supra; *Keister's Adm'r v. Keister's Ex'rs.,* 123 Va 157, 96 SE 315 (murder) ; *Peters v. Peters,* 156 Cal 32, 103 P 219 (wife shot husband) ; *Strom v. Strom,* 98 Minn 427, 107 NW 1047 (assault during coverture and suit after divorce) ; *Wright v. Davis,* 132 WVa 722, 53 SE2d 335 (murder and suicide) ; *Schultz v. Christopher,* 65 Wash 496, 118 P 629 (venereal disease; infection during coverture; action after divorce.) The cases last-cited do not appeal to our sense of justice.

Turning to the authority of learned treatises, we find a different situation. Prosser sets forth the common-law theory of the legal (though not necessarily factual) unity of husband and wife, and the theory of nonliability based on the protection and harmony of the home. He suggests as the basis for the rule "a mixture of the Bible and mediaeval metaphysics,

the position of the father in Roman law,  *  *  *  or the property law of feudalism.'' We quote:

"All this state of affairs belonged to a social order which has been dead for more than a century.

*  *  *  *  *

"*  *  *  The chief reason relied upon by all these courts, however, is that personal tort actions between husband and wife would disrupt and destroy the peace and harmony of the home, which is against the policy of the law. This is on the bald theory that after a husband has beaten his wife, there is a state of peace and harmony left to be disturbed; and that if she is sufficiently injured or angry to sue him for it, she will be soothed and deterred from reprisals by denying her the legal remedy—and this even though she has left him or divorced him for that very ground, and though the same courts refuse to find any disruption of domestic tranquillity if she sues him for a tort to her property, or brings a criminal prosecution against him.  *  *  *

"A considerable minority of the courts, with the unanimous approval of legal writers, have followed a dissenting opinion of Mr. Justice Harlan, rejecting all these arguments as specious, and have construed the Married Women's Acts to permit an action by either spouse for a personal tort committed by the other, whether it be intentional or negligent in character. This minority has been increasing in recent years, encouraged in automobile cases by the presence of liability insurance and other factors remaining to be considered. An exhaustive analysis of the problem in a recent Oklahoma decision seems to leave no justification for the minority rule except that of historical survival." Prosser on Torts, Hornbook Series, Torts in the Family, chapter 19.

Other learned writers broadly support the right of recovery, particularly for intentional torts. From Mc-

Curdy, Torts Between Persons in Domestic Relation, 43 Harv L Rev 1030, 1082, we quote:

> "In view of the paucity of authority, the unsatisfactory and inconsistent character of the reasons advanced, the different and inconsistent treatment of husband and wife and parent and child, in several instances by the same court, and the changed economic conditions of the present day, the problem of a cause of action for personal injury should be considered an open question, meriting a more careful and exhaustive analysis, a more critical appreciation of the factors involved, and a more rational treatment than it has received in the past."

Speaking on the doctrine based on peace and harmony of the home, he says:

> " * * * It may be observed that when one spouse assaults another, or when suits are brought, there is not much domestic tranquillity left to be disturbed. But if there is validity in this view, why not permit actions after coverture has been terminated, or, in violation of logic, when the real party defendant in interest, so to speak, is the spouse's employer or is an insurance company, under a liability indemnity policy, as is so often the fact in automobile negligence cases? These form the bulk of recent cases, and presumably both spouses are in complete and complacent harmony. Indeed, the strongest argument against such actions is not disruption of domestic tranquillity, but the danger of domestic collusion. * * * " McCurdy, Torts Between Persons in Domestic Relation, 43 Harv L Rev at 1052.

In this connection we observe that as to intentional torts, and especially where one spouse shoots the other, there is no danger of domestic collusion. Again, we quote from McCurdy:

> " * * * Today there is a certain background of experience which was necessarily lacking when

courts first denied personal tort actions between the spouses. There is nothing to show that in the states which permit such actions the peace and harmony of the home is disrupted to any greater extent, or that the courts are deluged with a greater flood of such litigation, than in the states which deny the action. Here the words of Mr. Justice Crownhart, dissenting in Wick v. Wick, have particular significance:

" 'Courts may prophesy, but the practice often leads them to embarrassment * * * Every step taken to emancipate women from the rigorous restrictions of the common law has been met with dark forebodings on the part of the judiciary. But now that women have been put in a parity with men as to their personal and property rights, society survives, with none of the dark portends of the judicial prophets realized' " McCurdy, 43 Harv L Rev 1030, 1053.

See also, E. F. Albertsworth, 10 Cal L Rev 480; Farage, Recovery for Torts Between Spouses, 10 Ind Law Journal 290; 10 Cornell Law Quarterly 61; 6 NYULQ Rev 53; 22 Yale LJ 250; 23 Yale LJ 613; 23 Ill L Rev 174.

We next consider the effect of the Oregon decisions. The courts of this state have not been required to decide this issue, but certain of our decisions are nevertheless highly relevant.

In *Kosciolek v. Portland Ry., L. & P. Co.*, 81 Or 517, 160 P 132, an action against a third party for loss of consortium, it was held that a widow could not at common law maintain such an action and that the statute, OCLA, § 63-202 did not confer upon the wife any new right of action. The rule of the Kosciolek case was approved and applied in *Sheard v. Oregon Electric Ry. Co.*, 137 Or 341, 2 P2d 916. The statute was amended by Oregon Laws 1941, chapter 228, and

the right of action for loss of consortium was expressly granted. The decisions and the statute are discussed in *Smith v. Smith,* supra, decided of even date herewith. The right of a wife to sue her husband for intentional tort was not involved in either of these cases, although the ancient common-law doctrine concerning the status of a wife was expounded.

We have previously considered *Cowgill, Adm'r v. Boock, Adm'r,* 189 Or 282, 218 P2d 445, in another connection. We now consider it for its bearing upon the right of a living son to sue his father and, by analogy, the right of the living wife to sue her husband for an intentional injury. In that case the court expressly conceded that the father did not intend to kill his son, but the majority of the court found substantial evidence of gross negligence and intoxication and that the father was guilty of manslaughter and of wilful misconduct. Wilful misconduct was defined as involving the intentional doing of something, either with the knowledge that it is likely to result in serious injury, or with the wanton and reckless disregard of its possible consequences. While disavowing an intentional killing, the majority found that the father's acts involved "more than ordinary or gross negligence." Having thus arrived at judicial appraisal of the legal character of the father's conduct, the majority proceeded to consider whether the son could have sued the father if the injury had not been fatal. The conclusion of the court in the Cowgill case is of profound significance for the decision of the pending action. The court then reviewed but refused to approve the following cases in which recovery had been denied for an intentional injury (not merely an intentional act resulting in injury): *Hewellett v. George,* 68 Miss 703, 9 So 885; *McKelvey v. McKelvey,* 111 Tenn 388, 77

SW 664; *Roller v. Roller,* 37 Wash 242, 79 P 788, 68 LRA 893, 3 Ann Cas 1, 107 Am St Rep 805.

The majority in the Cowgill case correctly stated that there was a mass of authority supporting the nonliability rule. It then cited authorities of high character which had subjected the rule to severe criticism. It acknowledged that the peace and tranquillity of the home was the foundation upon which our government rests, and it said further:

"* * * It is unthinkable that a parent, while acting within the scope of domestic relations, should be brought into court to defend against every unintentional personal tort that might be committed against a minor child. * * *" *Cowgill v. Boock,* 189 Or 282 at 297.

But the court continued:

"Whatever may be the early common rule, we could not be bound thereby unless it is supported by reason and logic. The law is not static. It is a progressive science. What may have been a wholesome common law rule a hundred years ago may not be adapted to the changed economic and social conditions of this modern age. In Rozell v. Rozell, 281 N.Y. 106, 112, 22 N.E. (2d) 254, 123 A.L.R. 1015, it is said:

" 'The genius of the common law lies in its flexibility and in its adaptability to the changing nature of human affairs and in its ability to enunciate rights and to provide remedies for wrongs where previously none had been declared.' "

See also, *Rozell v. Rozell,* 281 NY 106, 22 NE2d 254.

We have not overlooked the dictum concerning actions for tort between husband and wife. The court said:

"* * * A wife—who is now on the same legal plane as her husband—may sue the latter for a personal tort. * * *"

The quoted pronouncement concerning the right of action between husband and wife was not necessary to the decision, nor was it based upon any serious consideration of the authorities upon that subject, but it does indicate that the majority believed that, at least in cases of wilful or malicious torts, a wife might sue her husband. The decision of the majority was supported by the concurring opinions of Justices ROSSMAN and LATOURETTE. Both paid tribute to the view that "The law must keep pace with life and develop with the expanding enlightenment of the age." From the opinion of Justice ROSSMAN we quote a portion which is relevant to the case at bar. Speaking of the denial of liability in *Hewellett v. George,* supra, he said:

> " * * * If the rule employed in that case must be applied in this one, the result will be an absurdity, for if recovery is denied under a belief that we will thereby preserve the tranquillity of the home and the authority of the father over his son, we are met with the solemn fact that both father and son are dead. * * *" *Cowgill v. Boock,* 189 Or 282 at 302.

In the same opinion various exceptions were made to any general rule of liability. Three judges of this court dissented from the majority decision. The dissenting opinions expressed concern by reason of the difficulty of drawing a line for this kind of case which lies somewhere between simple negligence on the one hand, and intentional harm on the other. The opinion of Mr. Justice LUSK, however, indicates that if the line were drawn so as to allow recovery only for intentional wrongs, the situation might be different. We quote:

> " * * * If the evidence justified the belief that the conduct of the father was in fact malicious I might be able to go along with the majority, for

the word 'malicious' means 'harboring malice, ill will, or enmity; having a deliberate intention to injure others; intending or determined on evil.'"

From the dissent of Brand, J., we quote the following:

"Persuasive criticism is heaped upon the decisions which grant immunity to a parent who rapes or brutally beats or maliciously harms or imprisons his child in an insane asylum. The peace and harmony of the family, the maintenance of which is the basis for the rule of nonliability, has already been destroyed, it is said, when a parent inflicts intentional harm upon his child. There is great weight to that argument. * * *" *Cowgill v. Boock*, 189 Or 282 at 312.

Thus was established in Oregon a rule in which all appear to have agreed that, at least in the case of torts in which personal injury was intended, a minor child may sue his father, and consequently the administrator of the minor child may sue the executor of the father, under the Death Statute.

■ While the traditional relationship between parent and child differs in some respects from that between husband and wife, nevertheless the same rule of public policy was established at common law in both situations. We think that both the majority and minority opinions in the Cowgill case indicate a sense of judicial duty to modify the ancient rule of immunity by judicial decision and to eliminate the injustices which were inherent in that rule as to parent and child. By strong analogy, the case also applies as to husband and wife. We conclude that our duty in the pending case is clear. We must hold that if the wife had survived the rifle blast which took her life she would have had a right of action for damages against her husband, or against his representatives. It is the virtue of the common

law that as mores change, the law will also change. An old rule is eroded and a new rule attaches to the body of the law by accretion. The process is best accomplished by gradual change as justice may require in the individual case. For that reason we limit this holding to the facts in the instant case. Sufficient unto the day are the problems thereof.

■ We hold that when a husband inflicts intentional harm upon the person of his wife, the peace and harmony of the home has been so damaged that there is no danger that it will be further impaired by the maintenance of an action for damages and she may therefore maintain an action.

We have demonstrated that the wife, had she survived, might have sued her husband for intentionally shooting her, and we therefore conclude that an action might lie, under the Death Statute. But that act provides that the personal representative of the former (the wife) may maintain an action for the benefit of the widow or widower and dependents, and in case there is no widow or widower or surviving dependents, then for the benefit of the estate. The defendant contends that the wife's administrator can not bring this action for the benefit of the estate because she died leaving surviving her a husband, who is to be deemed "her widower". The statute, on its face, does of course provide that when there are no dependents of the deceased, the action shall be brought for the benefit of the "widower". In the ordinary case and, undoubtedly in the situation contemplated by the Legislature, the action would be brought by the administrator for the benefit of the widower. This court has several times stated that the action will not lie for the benefit of the estate if the preferred beneficiary is "in existence". *Anderson, as Administrator v. Clough et*

*al.,* 191 Or 292, 230 P2d 204; *Hansen v. Hays,* 175 Or 358, 154 P2d 202; *Ross v. Robinson,* 174 Or 25, 147 P2d 204. But in none of the cases in which that rule was laid down was the court considering a situation in which the husband was the one who killed his wife and against whom, if he had lived long enough, the action would have been brought. The language used in those cases must be read in the light of its context.

The real party in interest in an action under the Death Statute is the beneficiary appointed to take. Was it intended by the Legislature that the murderer should, in legal effect, be both plaintiff and defendant? Here, the husband and wife died on the same day. The statute does not name the heirs or representatives of a "widower" as preferred beneficiaries. Their right, *if any,* in the ordinary case, would necessarily be dependent on the fact that the "widower" was legally the beneficiary prior to his death. If the widower had no right before he died, then his heirs or representatives would have no right after he died. Let us assume for a moment that the wrongful death was caused by a third party and that the husband became a widower in the usual way, without felonious activity on his part. It would seem clear that the heirs or representatives of such a widower would have no standing as beneficiaries in an action for death unless, before he died, he was a preferred beneficiary under the statute. To hold that an action under the Death Statute could be maintained against the man who murdered his wife, for the benefit of that same man, would, in our opinion, be preposterous. We find no case which holds that the processes of the courts could be perverted to such a use. Nor does the defendant contend that an action could have been brought by the administrator for the benefit of the husband for his own wrongful act.

In *Dishon's Administrator v. Dishon's Administrator,* 187 Ky 497, 219 SW 794, the husband murdered his wife and then died. The question was whether the Death Statute gave a cause of action to the administrator of the wife against the administrator of the husband. The statute made the husband the beneficiary in actions for death of the wife caused by wrongful act. It was held that the wrong-doer was, in effect, both plaintiff and defendant, which resulted in the conclusion that the real parties in interest were not beneficially interested, and the case was moot. The court held that no one could profit by the action except the attorneys.

In *Robinson's Administrator v. Robinson,* 188 Ky 49, 220 SW 1074, the same court, in an opinion by the same justice who had written the Dishon case, considered litigation in which the husband murdered his wife and her administrator brought action against him under the Death Statute. In that case the wife was survived by children as well as by husband. It was held that the case was not moot and the administrator could recover for the children the share given them by statute, but the husband could not share in the recovery.

The defendant cites the case of *Davenport v. Patrick,* 227 NC 686, 44 SE2d 203. In that case the death of the wife was caused by the negligence of the husband in operating a motor vehicle. In the case at bar we are concerned only with intentional injuries to the person of the wife. However, the Death Statute provided that the sum recovered shall be distributed as provided in the case of intestacy. The wife was survived by her husband and by her father and mother. The court said that the husband was the sole beneficiary of her estate under the law and of any recovery that might

be obtained for her wrongful death. This was not a case in which various classes were named in order of priority. There was only one class, and the husband was its only member. The court said:

"Public policy in this jurisdiction buttressed by the uniform decisions of this Court will not permit a wrongdoer to enrich himself as a result of his own misconduct." Citing cases.

See *Perry v. Strawbridge*, 209 Mo 621, 108 SW 641; *Box v. Lanier*, 112 Tenn 409, 79 SW 1045; *Riggs v. Palmer*, 115 NY 511, 22 NE 190.

■■ The plaintiff cites the following portion from Wharton on Homicide, which supports the generally recognized doctrine of the common law that no person shall be permitted to profit by his own criminal act:

"To permit a person who commits a murder, or any person claiming under him, to benefit by his criminal act, would be contrary to public policy. And no devisee can take under the will of a testator whose death has been caused by the criminal and felonious act of the devisee himself. And in applying this rule, no distinction can be made between a death caused by murder and one caused by manslaughter. Nor does the common-law right of succession by descent operate in favor of one who wilfully takes the life of his ancestor for the purpose of succeeding to his property rights. And the common-law right of a man to succeed to the property of his wife upon her death does not operate in favor of one who murders his wife. And the rule that the common-law doctrine of succession to property does not operate in favor of one who wilfully takes the life of his ancestor should apply against any person claiming through or under the slayer. Nor does a rule of law that a common-law right of succession to property does not operate in favor of one who wilfully takes the life of his ancestor contravene a constitutional provision that a con-

viction of crime shall not work a forfeiture of the estate." Wharton on Homicide, 3d ed, § 665, p 1064. We consider it clear beyond question that the husband could not profit by his own criminal act.

An Oregon statute provides as follows:

"No person who feloniously takes or causes or procures another so to take the life of another shall inherit from such person, or receive any interest whatsoever in the estate of the decedent as surviving spouse, or take by devise or legacy from such deceased person any portion of his or her estate; and no beneficiary of any policy of insurance or certificate of membership issued by any benevolent association or organization payable upon the death or disability of any person who in like manner takes or causes or procures to be taken the life upon which such policy or certificate is issued, or who causes or procures a disability of such person, shall take the proceeds of such policy or certificate; but in every instance mentioned in this section, all benefits that would accrue to any such person upon the death or disability of the person whose life is thus taken or who is thus disabled shall become subject to distribution among the other heirs of such deceased person according to the rules of descent and distribution in case of death as now provided by law, and in case of disability the benefits thereunder shall be paid to the disabled person. Provided, however, that an insurance company shall be discharged of all liability under a policy issued by it upon payment of the proceeds in accordance with the terms thereof unless before such payment the company shall have written notice by or on behalf of some claimant other than the beneficiary named in the policy that a claim to the proceeds of such policy will be made by the heirs of such deceased or disabled person under the provisions of this act." OCLA, § 16-203.

It is true that this statute does not, in express words, bar recovery by a murderer under the Death Statute,

but it does by clearest language establish the public policy of the state in harmony with the common-law rule that a criminal shall not profit by his own crime. The United States Supreme Court has shown us the way in cases of this kind:

"* * * The appropriate way to read legislation in a situation like the one before us, was indicated by Mr. Justice Holmes on circuit: 'A statute may indicate or require as its justification a change in the policy of the law, although it expresses that change only in the specific cases most likely to occur to the mind. The Legislature has the power to decide what the policy of the law shall be, and if it has intimated its will, however indirectly, that will should be recognized and obeyed. The major premise of the conclusion expressed in a statute, the change of policy that induces the enactment, may not be set out in terms, but it is not an adequate discharge of duty for courts to say: We see what you are driving at, but you have not said it, and therefore we shall go on as before.' Johnson v. United States (CCA 1st) 163 F 30, 32, 18 LRA (NS) 1194, 2 Am Bankr Rep 724." *United States v. Hutcheson*, 312 US 219, 85 L ed 788, 794.

The provisions of our Death Statute should be read in the light of the common-law rule, and of the statutory declaration of the public policy of the state, and that policy should be applied to bar any action under the Death Statute for the benefit of one who killed his wife.

The defendant has not asserted the contrary. He does assert that it is "completely immaterial" whether or not an action could have been brought for the benefit of the surviving spouse, and he argues, in substance, that the right of the administrator to sue for the benefit of the estate is dependent upon the "nonexistence" of the surviving spouse regardless of whether

such existing spouse is disqualified as a beneficiary. We are unable to follow this reasoning. We think it is material to the decision of this case to determine whether an action could have been brought for the benefit of the husband. Our reasons will appear.

A careful consideration of the provisions of OCLA, §§ 8-902 and 8-903 clearly indicates an intention on the part of the Legislature that there shall be a cause of action in the administrator for the benefit of some beneficiary. The classes of preferred beneficiary, as defined in OCLA, § 8-903, are first, the widow or "widower" and dependents; and second, if there is no widow or "widower", then for the surviving dependents; and third, if there are none of these beneficiaries, then for the benefit of the estate. The difficult position in which the defendant finds himself is this: Since, by reason of the public policy of this state, there can be no recovery for the benefit of the husband who killed his wife, it follows that the defendant's contention must be that there is no recovery for the benefit of any person. Such a construction would defeat the entire purpose of the Death Statute. The courts have met this problem in a number of different ways which clearly evidence the fact that they appear to be impelled to find some remedy in accordance with the real intention of the Legislature.

In behalf of the plaintiff it is argued that Forest Joss was not the "widower" of the deceased within the meaning of the statute. It is asserted that a widower is a man who has "lost" his wife and has not married again, (Webster's New International Dictionary) and that it is implicit in the word "lost" that some inadvertent, unlooked-for or unsolicited event occurred. He suggests that it can not be said that a person who intentionally disposes of a thing has lost

a thing.  We find this theory supported in the authorities.

In *Lytle v. Southern Railway—Carolina Div.*, 171 SC 221, 171 SE 42, 90 ALR 915, action was brought under the Federal Employers' Liability Act.  The administrator of the estate of Alf Lytle sued the Southern Railway—Carolina Division for the wrongful death of the deceased who was an employee of the railroad engaged in interstate commerce.  The action was brought for the benefit of the deceased's mother, the only surviving parent.  It was alleged that the deceased left no children and that his wife had deserted him and had eloped with an adulterer.  The defendant demurred upon the ground that the complaint failed to show a cause of action under the Federal Employers' Liability Act for the benefit of the mother, there being, as alleged in the complaint, a living widow.  The Federal Act provided that:

> " * * * 'an employer shall be liable, "in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, *if none,* then of such employee's parents; and, if none, then of the next of kin dependent upon such employee." * * *' " *Lytle v. Southern Railway —Carolina Div.*, 152 SC 161, 163, 149 SE 692.

The court held that it was the policy of the law to give the unfaithful wife no rights or legal status as a widow.

It was held that since the statute did not determine who are to constitute members of the classes named therein, the question must be decided by state law.

The court said:

> "There is, however, a fundamental principle of statutory construction that 'it is the duty of the court to ascertain the meaning of the legislature

from the words used and the subject-matter to which the statute relates, *and to restrain its operation within narrower limits than its words import* if the court is satisfied that the literal meaning of its language would extend to cases which the legislature never intended to include in it.' (Italics ours.) Petri v. Commercial Nat. Bank, 142 U.S. 644, 12 S.Ct. 325, 326, 35 L.ed. 1144; The Lessee of Brewer v. Blougher, 14 Pet. 178, 10 L.ed. 408. Or, as expressed in slightly different language, in Reiche v. Smythe, 13 Wall. 162, 164, 20 L.ed. 566, it is said: 'If it be true that it is the duty of the court to ascertain the meaning of the legislature from the words used in the statute and the subject-matter to which it relates, *there is an equal duty to restrict the meaning of general words,* whenever it is found necessary to do so, in order to carry out the legislative intention.' * * *'' 171 SC 221, 171 SE 42, 90 ALR 915 at 918.

It was held that

" * * * the term 'widow,' as used in the Federal Employers' Liability Act, should be given a *restrictive* rather than a literal meaning, so as to carry into effect the obvious remedial object of the statute to create a right of action against the employer for the benefit of persons having either in law or morals some claim of right to support at the hands of the deceased employee. * * *

* * * * *

" * * * But it would be an absurdity to say that the deserting wife, whose misconduct barred her from asserting any rights to claim benefit of the marriage during her husband's lifetime, could in any proper sense be regarded as bereaved of her husband by his death.''

In conclusion, the court said:

"It follows on applying the foregoing considerations to the particular facts disclosed by the evidence in this case, that the deceased employee, Alf Lytle, did not leave a 'widow' entitled to claim the

benefit of the provisions of the Federal Employers' Liability Act, and hence, under the alleged and proven circumstances, the right of recovery, conferred by the act, accrued solely to his mother." *Lytle v. Southern Railway—Carolina Div.,* 171 S.C. 221, 171 SE 42, 90 ALR 920.

In *Perry v. Strawbridge,* 209 Mo 621, 108 SW 641, the court stated the question for decision as follows:

"* * * can a husband who murders his wife inherit the one-half part of her estate under section 2938, Rev. St. 1899? * * *"

That statute provided that

"* * * when a wife shall die without any child or other descendants in being capable of inheriting, her 'widower' shall be entitled to one-half of the real and personal estate belonging to the wife at the time of her death." (Rev St 1899, § 2938.)

The court gave a learned and exhaustive review of the authorities bearing upon the duty of the courts in cases of this kind to construe the statute in the light of the common-law rule stated by Wharton, supra. In conclusion, the court said:

"In fact, the pathway of judicial literature from the earliest period down to the present is literally strewn with cases which, like beacon lights, have guided the hand of justice in preventing unjust, unrighteous, absurd, unreasonable, and abhorrent results from the use of general words and expressions in statutes. To cite and quote more would be but to become tedious. We have gone thus far on account of the newness of the particular question of this case. Under these authorities we should not, and will not, hold that 'widower' as used in section 2938, supra, means one who has created a condition by murderous hands and heart. This case is without the statute. 'Widower' as there used means one who has been reduced to that condition by the ordinary and usual vicissitudes of life, and

not one who, by felonious act, has himself created that condition.''

Our own court has quoted with approval the substance of the foregoing passage. See *In re Norton's Estate,* 175 Or 115, 125, 151 P2d 719.

The defendant seeks to avoid the damaging effect of the Strawbridge case by pointing out that no benefit is being sought for the estate of Forest Joss, and furthermore that the Strawbridge case involved a construction of the statute of Descent and Distribution and not of a death statute. We do not cite the case merely to show that the murderer could not inherit. Above and beyond this, the Strawbridge case stands as a strong authority for the rule that the word ''widower'' shall not be construed to include one whose wife is dead by reason of his felonious act. If a man who feloniously kills his wife is not a ''widower'' under a statute of descent and distribution, a fortiori, he is not a ''widower'' under a death statute. In the Descent and Distribution statute the husband was prima facie the heir of his deceased wife. In a death statute there is no prima facie right on the part of a person to be both plaintiff and defendant in the same case. Of course, the logical application of the Strawbridge case in the pending litigation is that since the felonious husband was not her widower, the statute would operate which provides that in case there is no widower, the action shall lie for the benefit of the estate.

In *Folk v. United States,* 102 F Supp 736, action was brought under the Federal Tort Claims Act for wrongful death under sections 411 and 412 of the Code of Laws of South Carolina. It was held that:

''Where wife of deceased lived in adultery with another man before death of deceased, she was not

a 'widow' under South Carolina Wrongful Death Statute, and right of recovery for deceased's death accrued to his mother. Code S.C. 1942, §§ 411, 412, 419.'' Headnote 2.

The case was subsequently reversed upon other grounds but the ruling in the portion quoted was not changed. The Oregon court arrived at a similar conclusion by a different process.

*In re Norton's Estate,* supra, 175 Or 115, 151 P2d 719, Minnie Norton, Administratrix of the Estate of Mary Norton, deceased, brought an action against Claude Harold Norton and others to determine the heirs and distributees of the estate. The named defendant, Claude Harold Norton, filed a cross petition and cross complaint, claiming the entire estate. The son of Mary Norton murdered her. Claude Harold Norton was the grandson of the decedent and the only child of Clarence H. Norton who feloniously killed Mary Norton. Under the statute, Clarence H. Norton had lost his right to inherit from Mary Norton. On the first appeal this court cited *Perry v. Strawbridge,* supra, for the proposition that the term "widower" means one who has been reduced to that condition by the ordinary and usual vicissitudes of life, and not one who by felonious act has himself created that condition. (175 Or at 125.) It was held that neither the murderer nor his son could inherit. The case was again before this court, 177 Or 342, 162 P2d 379. Proceedings were instituted to determine heirship in the matter of the estate of Mary Norton, deceased. In this case the parties were Clarence H. Norton, son of the intestate, Claude Harold Norton, son of Clarence and the executrix of the estate of Emma Gardner, deceased. Emma was a sister of the intestate. This court considered the provisions of OCLA, § 16-101 per-

taining to the descent of property in event of intestacy and held that the words of the statute ''If the intestate shall leave no lineal descendants'' refer to lineal descendants qualified to succeed to the estate of the intestate. We held that if it was determined that Clarence H. Norton took his mother's life, the executrix of the estate of Emma Gardner would succeed to the estate.

■ In the pending case it is of no especial consequence whether we say that Forest G. Joss was not the ''widower'' or say that he was not ''a widower qualified to take'' as the beneficiary under the Death Statute. In either case he was not a preferred beneficiary and under OCLA, § 8-903 as amended, we find that there was no widower or no widower qualified as a beneficiary, and therefore, there being no dependents, the personal representatives of the deceased may maintain an action ''for the benefit of the estate''.

Other cases supporting our opnion by analogy are: *Parker v. Potter*, 200 NC 348, 157 SE 68; *Garner v. Phillips*, 229 NC 160, 47 SE2d 845; *Weaver v. Hollis*, 247 Ala 57, 22 So2d 525; *McDonald, Adm'r v. Mutual Life Insurance Co.*, 178 Iowa 863, 160 NW 289; *Price v. Hitaffer*, 164 Md 505, 165 A 470; *Garwols v. Banker's Trust Co.*, 251 Mich 420, 232 NW 239.

The defendant relies upon *Wenker v. Landon et al.*, 161 Or 265, 88 P2d 971. The case is clearly distinguishable. In that case it was held that one who feloniously killed his spouse nevertheless becomes owner of property held by them as tenants by the entirety. The decision is based on the proposition that the survivor in such a tenancy takes no new interest in the estate. Each owner held the entirety before death of one.

■ There is another consideration which tends to support our conclusion. In *Smith v. Smith,* decided of

even date herewith, we considered the effect of Article I, section 10 of the Oregon Constitution, which provides that:

"* * * every man shall have remedy by due course of law for injury done him in person, property or reputation."

We held that such provision did not create any rights, but only guaranteed "recognized" rights, consequently, the constitutional provision did not of itself give a wife the right to sue her husband when there was no such right "recognized" at common law. We adhere to that view. But in the pending case we have held that the common law does give to a wife a cause of action against her husband by reason of his intentional tort, and that consequently, the statute gave to her executor a cause of action under the Death Statute. Thus, in the pending case there was an "injury" done to the person of the wife. A substantive right had been violated upon which a statutory right was ingrafted by the Death Statute. In view of constitutional principle, we think that it should be inferred that some remedy by due course of law was vested in the executor for the benefit of some person or persons and that such was the intent of the Legislature. The statute clearly states that if there was no widower or dependent, a right of recovery was vested in the executor for the benefit of the estate. We think that the Legislature did not intend that the executor for the benefit of the estate should be deprived of all remedy merely because a certain man who could not himself benefit, because of his felonious act, was alive (in existence) for a time after the death of his wife.

In a carefully prepared opinion, the learned trial judge concluded that the wife could have maintained

an action against her husband had she lived. He considered "abhorrent" the idea that a husband can slay his wife and then benefit from his wrongful act. He intimated that the husband could "probably not" profit by his own wrong, but he concluded that in any event "a cause of action vested in the husband immediately upon the death of the wife", and he therefore dismissed the complaint. It is at this point that we must express disagreement. If, as we have indicated, the authorities hold that he was not a "widower" within the meaning of the statute, by reason of his felonious act, then he was not a beneficiary named therein, and no cause of action ever "vested" in him. It is suggested that such an interpretation would require the court to "prejudge" the facts as to whether the husband killed his wife and was therefore one "not qualified" under the statute. The answer appears to be that no fact need be prejudged in this case, for the complaint which is tested by demurrer, establishes the fact of the murder and disqualification. It is always necessary when the facts are not admitted for the court to determine from the evidence whether a person who claims to be a widower is one, or as stated in the Norton case, whether the person was a "widower qualified" to take. We hold that under the admitted facts no right of action ever vested in the husband.

Because of the importance and novelty of the issues, we have laboriously examined the briefs and authorities cited. The case upon both sides has been presented with extraordinary ability. The complaint stated a good cause of action.

Judgment is reversed and the cause is remanded for further proceedings conformable to this opinion.

Justice PERRY did not participate in the decision.