ANGELINE LO GALBO, as Administratrix, etc., of FILIPPO LO GALBO, Deceased, Plaintiff, v. JOSEPH LO GALBO, Defendant.*

Supreme Court, Oneida County, November 3, 1930.

Edmond J. Fitzgerald, for the plaintiff.

Miller & Hubbell, for the defendant.

* See, also, Crosby v. Crosby (230 App. Div. 651).

SMITH, EDWARD N., J. On the 15th day of June, 1930, plaintiff's intestate, while a passenger in an automobile owned and driven by his son, the defendant, received personal injuries from which he died, leaving him surviving his widow, Angeline Lo Galbo, a son, the defendant, twenty years of age, and nine other children varying from fourteen months to seventeen years of age. The allegation of the complaint is that the death of the plaintiff's intestate was caused through the negligent manner in which the defendant operated his automobile.

The motion to dismiss the complaint is made upon the ground that an action could not have been maintained by the deceased father against his minor son for injuries sustained under like circumstances had they not resulted in his death, and that, therefore, this action cannot be maintained.

Section 130 of the Decedent Estate Law (as added by Laws of 1920, chap. 919) provides that " the executor or administrator * * * of a decedent who has left him or her surviving a husband, wife, or next of kin, may maintain an action to recover damages for a wrongful act, neglect or default, by which the decedent's death was caused, against a natural person *who* * * * *would have been liable to an action in favor of the decedent by reason thereof if death had not ensued.*"

The fact that the defendant would participate in the distribution of the amount of any recovery in no wise affects the right to maintain the action. (*McKay* v. *Syracuse Rapid Transit Ry. Co.,* 208 N. Y. 359; *Wallace* v. *D'Aprile,* 221 App. Div. 402.)

The answering affidavits show that the defendant, although a minor, was, at the time of the accident resulting in the death, and for some time prior thereto had been emancipated. For the purposes of this motion it must be assumed that the decedent met his death through the negligence of the defendant, and that the defendant at the time was emancipated.

It has been held that a parent may not recover damages occasioned by the tort of an unemancipated minor child. (*Sorrentino* v. *Sorrentino,* 248 N. Y. 626; *Ciani* v. *Ciani,* 127 Misc. 304.)

In the *Sorrentino* case the Court of Appeals wrote no opinion, but by a four to three decision held that " an action for personal injuries resulting from negligence may not be maintained against a parent by an unemancipated child."

The broad rule of the common law, that a minor child could not recover against its parents for injuries received through the latters' tort, was based upon grounds of public policy, and for the reason that to hold otherwise would tend to destroy the family relationship; if the parental act were criminal, resort could be

had to the Penal Law. It would be easy to state situations where absolute adherence to this rule in negligence cases might result in a situation which would be little less than barbarous. Assume that a father of ample means had, through his negligence, maimed for life his son, destroyed his earning power, and that after the child so maimed had reached maturity the father disposed of all of his property by will without making provision for his maimed son, there would be a case where the resort to the public policy would work against a sound public policy; and it is possible that, out of consideration of such an instance and of the changed conditions arising out of the use of automobiles, the Court of Appeals gave such hesitant support to the old common-law rule. In any event, the decision goes no farther than to hold that a minor unemancipated child may not maintain an action grounded in negligence to recover damages against his parent. It follows that the converse of the rule must also be true; that a parent may not maintain an action against an unemancipated child to recover damages for injuries caused to him by the negligence of the child.

No question has been raised as to the technicalities in pleading. The complaint on its face states nothing as to the relationship of the defendant to the deceased, or as to his minority or emancipation. These questions of pleading and of burden of proof have not been considered, because not raised. The fact of emancipation only appears in answering affidavits. Both parties have been intent upon a determination of the main question, regardless of technicality. The issue of law is here; it should be met.

The above-quoted section of the Decedent Estate Law provides that an administrator's action in death cases may be maintained *" against a natural person who * * * would have been liable to an action in favor of the decedent by reason thereof if death had not ensued."* So that, in order to determine this question, we must ask and answer the question: Can a parent recover from his emancipated son damages for injuries caused to him by the negligence of such son? We may not consider here the fact, which may or may not be true, that, through the negligence of the son, the widow and the numerous children are left destitute, no matter what the ability of the guilty son may be to respond in damages. It may be assumed, however, that he has not responded in damages, and that the widow and the other minor children have been left without the ample earning power of the deceased parent. The only basis for a denial of the right to maintain such an action is that to allow the action would contravene sound public policy in that it would tend to impair the unity of the family.

Does emancipation of a child eliminate the question of public

policy? So far as mere friendly and family relations are concerned, the answer must be no; but so far as responsibility for his acts is concerned, and so far as his resources of earning power are concerned, the answer must be yes. I do not feel that, under present-day conditions, particularly in reference to automobile accidents, the question of public policy, which has been the basis of the common-law rule in respect to this sort of actions, should longer be applied. It is a matter of common knowledge that a great proportion of owners of automobiles are protected against damages by insurance, and that in such cases no question of public policy could possibly be involved (excepting only in cases of fraud in the action itself) and resort to the old common-law doctrine established in the aid of maintenance of family relationship would not, in automobile cases, be sound public policy, and might and usually would result in the defeat of the very purpose for which the rule was at common law maintained. Were the matter before me *de novo*, I would be in favor of the abrogation of the rule in its entirety, at least in automobile cases. A new condition has arisen through the use of the automobile where the balance has changed, and public policy urges a modification of this rule. Such a view at this time, in the presence of the above-cited decisions, is futile; but there is no holding that the rule will be applied in cases where a minor has been emancipated, and I am, therefore, of the opinion that, had the father suffered injuries through the negligence of his emancipated minor son, he would have had a right of action against such son, and that, therefore, the present action is maintainable and the motion to dismiss the complaint should be denied.