**Audrey WEINER, as Administratrix of the Estate of Julie A. Weiner, Deceased, Plaintiff,**

v.

**Barbara WEINER et al., Defendants.**

**No. 71 C 1177.**

United States District Court, E. D. New York.

Dec. 20, 1974.

---

Arthur D. Spatt, New York City (Spatt, Bauman & Wilkins, New York City, of counsel), for plaintiff.

Stanley W. Zawacki, New York City (Reilly & Reilly, New York City, of counsel), for defendant Weiner.

Samuel Levitt, Brooklyn (Schwartz, Levitt, Sommer & Blitz, Brooklyn, of counsel), for defendant Greyhound.

DOOLING, District Judge.

Plaintiff moves to set aside the verdict rendered on October 3, 1974, and for a new trial on the grounds that the verdict was contrary to law and against the weight of the credible evidence, that portions of the charge were materially erroneous, that admitting evidence that defendant Barbara Weiner would share in the recovery for her infant daughter's death was erroneous and prejudicial, and that certain questions and remarks by defense counsel during trial and in summation were so prejudicial as to require a fresh trial; in addition, plaintiff moves to set aside as erroneous the Court's dismissal of the complaint as against the defendant Greyhound at the close of the plaintiff's case, arguing that it was additionally prejudicial to dismiss since it denied to the jury the opportunity to give the plaintiff satisfaction for the alleged wrong to the deceased child without finding that it was the negligence of the child's mother that caused the child's death.

While the motion must be denied in all respects, it raises again an acutely troublesome and hopelessly unsatisfactory situation brought about by the apparently settled rule that in wrongful death cases arising out of intra-family tort, the fact that a beneficiary, or the sole beneficiary of any wrongful death recovery is the defendant whose negligence caused the death does not bar a recovery. In the present case the defendant Barbara Weiner, the operator of the family motor vehicle at the time of the accident, and her husband who was riding in the car with her were interested to the exclusion of anyone else in any recovery against Barbara Weiner for negligently causing her daughter's death. See Annotation, 1964, 95 A.L.R. 2d 585, 596 et seq.; Rozewski v. Rozewski, Monroe Co., 1944, 181 Misc. 793, 46 N.Y.S.2d 743; cf. Jenks v. Veeder Contracting Co., 3d Dept. 1942, 264 App. Div. 979, 37 N.Y.S.2d 230; LoGalbo v. LoGalbo, Oneida Co., 1930, 138 Misc. 485, 246 N.Y.S. 565; Rischer v. Owens, Nassau Co., 1957, 8 Misc.2d 1036, 171 N.Y.S.2d 463. The state cases have relied heavily on McKay v. Syracuse R.T.R. Co., 1913, 208 N.Y. 359, 101 N.E. 885 which, however, was a case in which a husband's recovery for the defendant's negligent killing of his wife was found not to be barred under the wrongful death statute even though the husband's negligence contributed to his wife's death. The more recent cases of Rischer v. Owens, *supra,* and Matter of Minetti, N.Y.Co., 1971, 65 Misc.2d 1011, 319 N.Y.S.2d 56, explicitly treat *Rozewski* as continuing to be the law.

Moral repugnance to "a person's profiting by his own wrong" is thought to be answered by the legislature's manifest knowledge of the elimination of older principles governing intra-family tort and its failure to restrict recovery under the statute. A difficulty remains. In the case in which the wrongdoer is the sole beneficiary of a wrongful death action, the rational objection to the case, all other things aside, is that it would be a null action, an absolute futility. There are, of course, intra-family tort cases, in which the action can result in a significant transfer of funds. For example, where the action is brought

nominally on behalf of the beneficiaries of a deceased child against one of two parents who, together, would have a totality of the interests in the recovery, the case could result in a significant transfer of funds from husband to wife (or *vice versa*) if that chanced to be, in a particular case, an aim worth pursuing for some socially recognizable reason. Still, so far as the action necessarily assumed a recovery by the wrongdoer against the wrongdoer, it would be a nullity, self-cancelling conduct that could not be given practical or legal vitality by using the apparatus of appointing someone other than the parents as administratrix or administrator for the purposes of suit. The difficulty stems from the failure openly to recognize such cases as—generally—actions against the indemnity company to make it pay an appropriate award for a covered risk that eventuated. It is not useful to speak of the cause of action as a statutory action nor to insist that the legislative act cannot be penetrated to examine its operation. Perhaps this whole subject ought to be re-examined in the light of Moragne v. State Marine Lines, 1970, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339. At minimum, the tolerance of such litigation in its present form creates for counsel all but impossible problems, and these must be returned to in considering the last of the points raised by plaintiff, the impropriety of the closing argument of defense counsel.

■ Plaintiff's basic argument is that on the evidence the jury could not in reason have found that the defendant driver was without fault. The contrary is the case. The accident in one sense was completely unexplained and all but inexplicable. The occupants of the Weiner car, if their evidence is credited, were denied the capacity to testify because, in Mrs. Weiner's case, she was rendered insensible and deprived of recollection of the accident by its impact, her husband, in his testimony, was asleep, and the young son of the family, riding in the back seat with his now deceased sister was not watching and could not in any case recall the events leading up to the accident. Road conditions were such as to dictate cautious driving; and the evidence was that both the bus with which the Weiner car collided and the Weiner car were traveling well below the speed limit. No evidence required a conclusion of negligent driving: the jury no doubt speculated over the possibility that Mrs. Weiner had fallen asleep while driving, but no evidence supported that inference, and for the jury to have treated it as an available inference, and to have found negligence on that basis would have been sheer speculation. The driver of the following car could say only that, as he saw it, the Weiner car moved right, got into the piled-up snow and slush on the right side of the road, and then struck across the road into the very path of the bus and unavoidably collided with it. That is all the evidence that there was. The bus driver could testify only to the sudden moving of the Weiner car into the path of his bus from the other side of the two lane highway.

Plainly the jury could have found that the Weiner car was negligently driven per force of the decisions in New York to that effect. Pfaffenbach v. White Plains Express Corp., 1966, 17 N.Y.2d 132, 269 N.Y.S.2d 115, 216 N.E.2d 324; Coury v. Safe Auto Sales Inc., 1973, 32 N.Y.2d 162, 344 N.Y.S.2d 347, 297 N.E.2d 88; Stafford v. Mussers Potato Chips, Inc., 4th Dept. 1972, 39 A.D.2d 831, 333 N.Y.S.2d 139. But these cases hold only that such a case as the present one must be submitted to the jury. They do not say, as plaintiff really now insists, that the plaintiff is entitled to prevail in every case in which a defendant vehicle has crossed the road into the path of an approaching vehicle. If that were so, plaintiff would be entitled to a directed verdict rather than to a new trial, for the case was fairly submitted to the jury in the light of these three

decisions and after full discussion and review of the charge with counsel for all parties.*

 Plaintiff complains of two errors in the charge, the first in the failure to charge that in a death action the plaintiff is not held to as high a degree of proof as is an injured plaintiff who can describe the accident. That charge is almost always given in death actions in New York, but it can hardly in reason be applied to such a case as the present one in which the decedent was a child riding in the rear seat of one vehicle, and the bus driver, the operator and the passenger in the following vehicle and three persons riding in the Weiner car, including the driver, survived the accident, were available to testify and did testify. The deceased child was playing a game with her brother at the time of the accident in the back seat, and, it may be inferred, was in no better position to describe the accident than was her surviving brother. The conventional charge is not derived from a statutory rule but is a practical charge element evoked by the particular circumstances of particular cases. It would have been simply irrational to have charged it in the present case.

 The second alleged error in the charge was the failure to strike from the conventional definition of negligence the requirement that the defendant's negligence must be found by the jury to have created a reasonably foreseeable risk of bodily harm to persons in plaintiff's situation. Not only was the request to delete this element from the charge made at much too late a date (for the charge had been in plaintiff's hands for several days before it was delivered), but the charge was given in plaintiff's hearing in exactly the words contained in the written charge earlier submitted to counsel, and it was later explained to the jury in counsel's presence in response to the jury's question about its application to the deceased child. Only after all that did plaintiff belatedly suggest that it had no place in the case. The suggestion was not acceptable at that point and indeed is not acceptable in legal principle. Defendant could not be liable unless her negligence was negligence toward her deceased daughter. That may seen obvious as a foreseeable element in any negligent driving where a passenger sues, but it remains nevertheless, an integral element in the concept of negligence. Here,

---

* The part of the charge involved was in the following language:

Where a statute directly imposes a specific driving rule, failure to conform to that rule is negligence.

There is evidence that a double yellow line divided the two lanes of highway 149 at the point where the accident occurred. A double yellow line under State Regulations is a "full barrier" marking, signifying that vehicles proceeding in either direction along the highway may not drive on the left side of the double yellow line. Vehicle and Traffic Law, McKinney's Consol.Laws, c. 71, § 1126(a), in force at the time of accident and today, provides that

" . . . no driver of a vehicle proceeding along such highway shall at any time drive on the left side of such markings."

If you find that there was such a double yellow line and that Mrs. Weiner drove her car to the left of the double yellow line, you must find that she was negligent in operating the Weiner car.

However, failure to drive to the right of the double yellow line may be justified or excused by emergency or other unusual circumstances.

It is for you to say in all the circumstances and on all the evidence whether defendant drove her car across the double yellow line, or whether at the time her vehicle crossed the double yellow line it had gone out of control and could not be prevented from crossing the lines.

If you conclude that there was not a violation of the statute in all the circumstances, you must nevertheless review all the evidence, and circumstances apart from that particular driving rule, and determine from that review whether defendant was or was not negligent.

The fact that the Weiner car crossed the centerline into the path of the bus, if you find that to be the fact, is evidence from which you may find that defendant was negligent. Similarly, the fact that the Weiner car left the roadway on the right and struck a snow bank or guard rail, if you find that to be the fact, is evidence from which you may find that defendant was negligent. However, neither fact, standing alone, nor both, standing alone, requires you to find that defendant was negligent. In reaching your final conclusion on negligence you take into account all the evidence bearing on that issue.

again, plaintiff in essence claims that there should have been a direction that as a matter of law the jury were required to find, if they found that the operator was negligent, that her negligent operation was negligence toward her daughter. The idea is a tempting one on the particular facts, but the proposition is invalid. Courts must be careful not to invade the province of the jury simply because in particular instances the application of this basic component in the concept of negligence may seem to the court perfectly clear. The whole concept of negligence is rife with complexities and it is these that the jury must resolve without being given dissected elements of negligence to pass on as if they constituted the whole concept.

■ Plaintiff contends that the jury should have been told, at plaintiff's request, that the estate (or administratrix) had an absolute right to commence the action against the mother of the decedent-infant. The request was declined. The whole case and the entire charge assumed that the plaintiff had the right to be in court. To have charged the jury in any language even nearly approaching the requested language would have been so overwhelmingly prejudicial to the defendant that it was unthinkable. The court is not wont in such a case as this or in any other case to charge the jury that a plaintiff has an absolute right to sue however manifestly true that is from the court's entertaining the action and its survival until the moment at which the case is ready for submission to the jury. Again plaintiff is simply reiterating its own contention that there was something peculiarly right about the action's being commenced, although that is very far from being clear.

■ Plaintiff contends that it was error to dismiss the action against the defendant Greyhound. There was not a scintilla of evidence against the defendant Greyhound. The evidence was that the Greyhound bus was being driven on its own side of the road and that it was not being driven at an excessive rate of speed. The evidence is that the entire accident happened in a time so very brief, measured from the first instant at which the Weiner car deviated from a normal path until the moment of impact, that the Greyhound driver was powerless to do anything except, it seems, to bear somewhat to the right as he applied his brakes. There is every indication in the evidence, and nothing to the contrary, to suggest that he did manage both to slow the bus somewhat and to bear somewhat to the right before the impact, and that he was able to do so much is indeed remarkable. The evidence did have in it the usual triumphs of the lawyer over the layman —in which the driver was made to appear to espouse the preposterous proposition that when he was eight hundred feet away from the point of impact he could see that the Weiner car was in trouble. That part of the driver's signed report and of his testimony was so manifestly a result of merely sematic confusion that it does not merit consideration. The Weiner car traveled—from the first moment it was in trouble to the point of impact—104 feet, more or less, at about 40 miles an hour (about 58 feet a second). Obviously the bus driver could not by any species of foresight have seen the accident developing at a distance of 800 feet unless his motor vehicle was going eight times as fast as the Weiner vehicle or about 320 miles an hour. The bus driver's estimate was, again, that he saw the Weiner car in danger when it was 225 to 250 feet away. That testimony, when it is compared with the 104 foot distance actually measured on the ground from the point where the Weiner car first deviated from normal-drive-path to point of impact, amounts to confirming that the bus was about that same distance from the point of impact. The evidence discloses nothing that could support a finding of negligent driving on the bus driver's part, and does not indicate that any escape path was open to him.

The final and most insistent point is, of course, plaintiff's point that it was unfair of defense counsel to present in any way to the jury the strange idea that the plaintiff administratrix was actually suing for the benefit of the defendant and her husband and not at all for her own benefit, and that the defendant wife and mother would, if there was a recovery by the plaintiff administratrix, be the beneficiary of one-half of the recovery. The defendant operator was inevitably and necessarily a witness in the case. Consequently her interest in the case and its outcome was a proper subject for presentation to the jury, and defendant, or rather her counsel of record, in the absurdity of this sort of case, was the one whose "case" would benefit by his showing that his "client's" interest, the defendant's interest, was in the plaintiff's recovery, since the defendant would be entitled to 50% of the plaintiff's recovery and would not bear the burden of any judgment in the plaintiff's favor. Absurdity was hardly excluded by the jury's inevitable realization that the balance of the recovery would go to the plaintiff's husband and that there was something exotic about the case. To say that the case presented to counsel on both sides every problem that could arise from the essential absurdity of the situation understates the realities. In a forthright action by the Weiners against the indemnity insurance company to recover the pecuniary loss the parents suffered by reason of their daughter's death as a consequence of the wife's alleged negligence in driving, the jury would and could have evaluated the testimony of the Weiners in the light of their interest in recovering against the insurance company, and that company could forthrightly have defended itself. The jury could then have weighed the credibility of the Weiners' testimony that they could not recall the incident, and consider the reason, if any, why the Weiners had not produced the hospital and medical records which might have demonstrated that Mrs. Weiner had an observed amnesia. When that point came up during trial ample time remained to get the hospital and medical records but that was not done. Plaintiff elected instead to rest on the testimony of the Weiners (who were plaintiff's witnesses) that, in Mrs. Weiner's case, she suffered a traumatic retrospective amnesia and that, in Mr. Weiner's case, he was unwell and asleep when the accident occurred.

Defense counsel was cautioned not to argue or to suggest to the jury that the parents of the child could not sue, or that their own negligence precluded them from recovering, or that the suit invited a "travesty of justice." Defendant's counsel did, permissibly, argue the defendant's interest in the recovery. But he did transgress the instruction in spirit if not literally, in effect asking the jury to agree with him that they would not themselves have been callous and immoral enough to seek a money recovery for a deceased child of their own by contending that their own negligence had encompassed the child's death. It can be said only that, literally, he did not argue to the jury that they ought not to return a verdict for the plaintiff administratrix because they would not themselves have sued had they been in the same position since they doubtless shared his view of the humanity and morality of the situation.

However, no motion for a mistrial was made, and the plaintiff, who summed up after the defendant, dealt, on the whole, as effectively with the matter as was possible. The issue which the improper remarks of defense counsel brought to the surface was ineluctably in the case, and, as defendant argues, was implicit in plaintiff's own elaboration of the issue of damages. The improper remarks could not materially worsen the situation and they were more than counter-balanced by plaintiff's skillful summation. The jury considered the case with evident care and its

inquiry did not disclose any emotional bias. The case contained evidence strongly favorable to recovery in the affecting testimony about the deceased child, her character, her exceptional abilities and her hold on the affections of her family, her brother particularly, and her schoolmates. These are additional factors that give assurance that the impropriety in the language of the defense summation was without effect.

The case underlines the fact that the time is long past when personal injury cases should continue to be tried without the jury's being in open possession of the facts respecting liability insurance; it may be assumed that they or many of them realize that insurance must be in back of the litigation, particularly when it is litigation within a close-knit family unit. Not only does trying the case in the absurd form in which the present case had to be tried belie the realities, but it puts counsel on both sides in false positions. The insurance company in such an intra-family case should be in court and honestly represented by counsel protecting its interests. Under the policy it is, basically, required to furnish counsel to defend the insured against charges of fault. It certainly does not contract to facilitate the insured's recovery against himself or herself where the proponent of the issue of the insured's fault, the true "plaintiff," is the "defendant" insured, and not the plaintiff administratrix, who has no beneficial interest in the suit. Plaintiff's counsel—really representing the pecuniary interest of the nominal defendant—should not be subjected to the necessity of suing the person who is in substance his client, and forcing upon insurance company counsel the self-contradictory role of representing as a defendant a person who is in economic fact a plaintiff.

The dilemma is, in part, of the indemnity insurer's making. Perhaps for good reasons, since such companies are closely regulated in this state, the companies shrink from making a direct issue with their insureds on the question of their liability to their own insureds for the insureds' negligence. But must not the companies face the issue directly, deny liability, and invite direct suit in cases in which their investigation genuinely affords them good reason to question their liability to their own insureds, and in which they would contest rather than settle if the issue were their insured's liability to a third and wholly stranger-party? And in a case such as the present one, if their investigation led them genuinely and in good faith to question their liability to the deceased child's parents, who were their insureds, it is not apparent that an appropriate course would not have been to deny liability, to decline to assume responsibility for the "defense" of a case brought to seek a recovery on behalf of (and not really against) the named defendants, and, if need be, to seek to be added as a party defendant to defend in the company's own name and right.

Obviously this issue was not free from doubt. However, in the circumstances of the present case, no fair ground for setting the verdict aside appears, and the motion is accordingly denied.

Accordingly, it is

Ordered that the motion of the plaintiff to set aside the verdict and to grant plaintiff a new trial is denied in all respects and the motion to set aside the dismissal of the complaint at the close of the plaintiff's case as against the defendant Greyhound Lines, Inc. is in all respects denied.